In re **REGGIE PACKING CO., INC.**

**REGGIE PACKING CO., INC., an Illinois corporation, Plaintiff,**

v.

**LAZERE FINANCIAL CORPORATION, a New York corporation, Defendant.**

**No. 87 C 5683, 87 B 2632 and 87 A 359.**

United States District Court, N.D. Illinois, E.D.

Oct. 20, 1987.

---

Faye B. Feinstein, Joanne A. Sarasin, Antonow & Fink, Terry G. Chapman, Abrams & Chapman, Chicago, Ill., appeared on behalf of plaintiff.

A. Bruce Schimberg, David M. Schiffman, Frank B. Vanker, Sidley & Austin, Chicago, Ill., Nathan P. Eimer, Sidley & Austin, New York City, appeared on behalf of defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiff in this case has requested a jury trial. In its answer to plaintiff's complaint, defendant objected to plaintiff's jury demand, contending that plaintiff has contractually waived the right to jury trial. Considering defendant's answer as a motion to strike plaintiff's jury demand, this court now grants defendant's motion, and denies plaintiff's request for a jury trial.

## FACTS

On June 14, 1985, plaintiff Reggie Packing Co., Inc. ("Reggie"), a wholesale distributor of meat products, entered into a written agreement with defendant Lazere Financial Corporation ("Lazere"). Under this contract, Lazere agreed to provide Reggie with account receivable financing in the form of a line of credit.

Pursuant to the financing agreement, Reggie requested and received a number of advances from Lazere between June 1985 and February 1987. On February 4, 1987, Reggie asked Lazere for an advance of $170,000—an amount that exceeded Reggie's borrowing limit under the terms of the agreement. Reggie alleges that Lazere initially approved the loan. Allegedly relying on Lazere's approval of the loan, Reggie issued payments to its suppliers and other creditors. Later that day, Lazere refused to advance $100,000 of the $170,000 that Reggie had requested. Un-

able to obtain alternative financing, Reggie could not pay its suppliers for the products it had purchased. On February 19, 1987, Reggie filed for bankruptcy.

Reggie claims that its meat distribution business collapsed because Lazere refused to extend credit. Based on a variety of legal theories, including breach of contract, interference with contractual relationships, and breach of fiduciary duty, Reggie seeks damages from Lazere.

When it filed this action, Reggie requested a jury trial. In its answer to Reggie's complaint, Lazere objected to Reggie's jury demand. Lazere pointed out that the financing agreement between the parties includes a waiver of the right to jury trial in litigation relating to the agreement. Contending that Reggie is bound by this contractual waiver, Lazere has asked this court to strike Reggie's jury demand.

## DISCUSSION

■ The Seventh Amendment to the United States Constitution guarantees the right to a jury trial in civil cases. Although this right is fundamental, it can be knowingly and voluntarily waived by contract. *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir.1986); *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755–56 (6th Cir.1985); *Amalgamated Trust & Sav. Bank v. United Artists Eastern Theatres, Inc.*, No. 79 C 5153 (N.D.Ill. Oct. 29, 1980).

The validity of the waiver in this case depends on whether Reggie knowingly and voluntarily consented to relinquish its Seventh Amendment right. The courts are sharply divided as to which party should bear the burden of proving knowing and voluntary consent. *Compare Leasing Serv. Corp.*, 804 F.2d at 833 (party seeking enforcement of waiver must prove that consent was knowing and voluntary) *with K.M.C. Co.*, 757 F.2d at 758 (party seeking to avoid waiver must prove that consent was not knowing and voluntary). This court, however, need not decide this difficult issue. Regardless of which party carries the burden of proof in this case, Lazere has adduced sufficient evidence to establish that Reggie's waiver was knowing and voluntary.

■ Reggie advances several reasons why this court should refuse to recognize the waiver. First, Reggie argues that a gross inequality in bargaining power existed at the time the parties signed the agreement. Reggie's President, Reginald Ash, has testified that the company desperately needed financing in June 1985, and that Lazere was Reggie's only available source of credit at the time. Reggie asserts that since it had no real choice but to sign the agreement in order to obtain badly needed financing, the jury trial waiver contained in the agreement was not knowing and voluntary.

As Reggie has correctly observed, the courts regard inequality in bargaining power as evidence that a contractual waiver of jury trial was neither knowing nor intentional. *See National Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir.1977); *Dreiling v. Peugeot Motors of America, Inc.*, 539 F.Supp. 402, 403 (D.Colo.1982). The facts of this case, however, do not suggest that Reggie labored under the sort of extreme bargaining disadvantage that would render the waiver invalid. Unlike the plaintiff in *National Equipment Rental*, Reggie retained an attorney to review the agreement. Furthermore, unlike the plaintiff in *Dreiling*, Reggie had the opportunity to negotiate the agreement's provisions. In fact, Lazere even altered two provisions in its form security agreement at Reggie's request, giving Reggie additional time to cure defaults. These facts belie the assertion that Reggie was completely at the mercy of its financier, and had no choice but to accept Lazere's terms.

■ In addition to challenging the waiver on grounds of unequal bargaining power, Reggie asserts that the waiver was not knowing and voluntary because it was inconspicuously located in Lazere's form contract. There are no special requirements, however, for setting off or highlighting a jury waiver clause in a contract. *See, e.g., Leasing Serv. Corp.*, 804 F.2d at 833 (upholding validity of waiver located in the

middle of a 38–line paragraph). Only in extreme cases will the courts invalidate a waiver clause due to its inconspicuous location in a contract. *See, e.g., National Equip. Rental,* 565 F.2d at 258 (waiver "literally buried" in eleventh paragraph of a 16–clause agreement); *Dreiling,* 539 F.Supp. at 403 (waiver located on page 20 of a 22–page standardized form contract). The clause in this case is not so obscure as to justify invalidation of the waiver. Contrary to Reggie's assertion, the clause is not "buried." The contract in question is only three pages long; and the waiver clause is located at the end of a paragraph, just two inches above the parties' signatures. *Cf. Leasing Serv. Corp.,* 804 F.2d at 833 (waiver sufficiently visible; lease agreement was only two pages long); *N. Feldman & Son, Ltd. v. Checker Motors Corp.,* 572 F.Supp. 310, 313 (S.D.N.Y.1983) (waiver provision clearly visible, located directly above signatures of contracting parties). Moreover, the waiver clause in the Reggie–Lazere agreement is set forth in the same type of print as every other clause in the contract, including the two clauses that were revised at Reggie's request. Reggie cannot credibly claim that the waiver was "buried" from its view when it requested revision of two clauses that were at least as inconspicuous as the waiver.

■ Finally, Reggie argues that the waiver should not apply to this case because the company that filed this lawsuit is not the same company that signed the agreement. Citing *In re General Coffee Corp.,* 32 B.R. 23 (Bankr.S.D.Fla.1983), Reggie contends that because it is now a debtor-in-possession, it is a separate entity from its pre-petition predecessor, and cannot be bound by a waiver to which its predecessor consented. Taken to its logical extreme, however, this argument would lead to the conclusion that Reggie currently has no standing to sue on the contract. It is more sensible in this case to adopt the Supreme Court's approach to bankruptcy: "[T]he debtor-in-possession [is] the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing." *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). Because the Bankruptcy Code does not enable a debtor-in-possession to avoid a contractual waiver of jury trial, Reggie cannot escape the binding effect of its waiver simply by declaring bankruptcy.

■ In contrast to Reggie's unpersuasive arguments, Lazere presents a strong case for the conclusion that Reggie made a knowing and intelligent waiver. As Lazere points out, Reggie and its counsel carefully reviewed the financing agreement. Reggie even asked for revisions in the agreement's default provisions, revisions that Lazere incorporated in the final version of the contract. Harry Goldson, the Lazere vice president who oversaw the Reggie–Lazere negotiations, has testified that although Reggie requested several changes in the contract, neither Reggie nor its counsel ever objected to the jury waiver provision or asked that it be altered. Reggie does not dispute Goldson's testimony. Moreover, Reggie cannot justifiably contend that Lazere's superior bargaining position made any objection to the waiver an exercise in futility. Lazere had already consented to two of Reggie's proposed changes. Presumably, if it had any reservations about the waiver, Reggie would have voiced those objections during contract negotiations. Instead, by signing the agreement without objecting to the waiver, Reggie demonstrated knowing and voluntary consent. Consequently, Reggie has waived its right to a jury trial in this case.

## CONCLUSION

For the foregoing reasons, this court grants defendant's motion to strike plaintiff's jury demand.

IT IS SO ORDERED.