STANDARD WIRE & CABLE CO., a California corporation, Dickran Hampikian, Betty A. Hampikian, Russell J. Skrable and Jerrilyn Skrable, Plaintiffs,

v.

AMERITRUST CORPORATION, a corporation; Ameritrust Company National Association, a corporation; AT Commercial Corporation, a corporation; Associates Corporation of North America, a corporation; and Associates Commercial Corporation, a Delaware corporation, Defendants.

AMERITRUST CORPORATION, a corporation, Counterclaimant,

v.

STANDARD WIRE & CABLE CO., a California corporation, Dikran Hampikian, Russell J. Skrable, Betty A. Hampikian, and Jerrilyn Skrable, Counterdefendants.

ASSOCIATES COMMERCIAL CORPORATION, a Delaware corporation, and Associates Corporation of North America, a corporation, Counterclaimants,

v.

STANDARD WIRE & CABLE CO., a California corporation, Dikran Hampikian, Russell J. Skrable, Betty A. Hampikian, and Jerrilyn Skrable, Counterdefendants.

No. CV 87–1630–AAH (Kx).

United States District Court, C.D. California.

Sept. 22, 1988.

Gary D. Stabile, Mullen & Stabile, Manhattan Beach, Cal., for plaintiffs.

Richard J. Stone, Geoffrey L. Bryan, Milbank, Tweed, Hadley & McCloy, Los Angeles, Cal., for AmeriTrust Corp., AmeriTrust Nat. Ass'n and AT Commercial Corp.

Gregory A. Long, Natalie Naftzger Davis, Mark D. Larsen, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for Associates Commercial Corp. and Associates Corp. of North America.

## OPINION AND ORDER RE: DEFENDANTS' PRE–TRIAL MOTIONS

HAUK, Senior District Judge.

## INTRODUCTION

Standard Wire & Cable Co. ("Standard") is a wholesale supplier of wire and cable products. In August 1984, Standard obtained a secured line of credit loan from defendant Associates Commercial Corp. ("Associates"). This loan was subsequently assumed by AmeriTrust Corp. ("AmeriTrust"), when it purchased the Business Loans Division of Associates in July 1986.

This dispute arises out of disagreements between the parties during the lending relationship and alleged fraud during the negotiation and performance stages of the loan. Standard filed a petition for Chapter 11 bankruptcy on March 13, 1987 and filed this suit against Associates (and its parent corporation) and AmeriTrust (and two subsidiary corporations) on March 16, 1987.

Standard filed a Supplemental and First Amended Complaint, which includes 25 causes of action, on November 30, 1987. The Associates and AmeriTrust groups of defendants, respectively, filed Answers and Counterclaims on January 29, 1988.

## MOTIONS PENDING

Before the Court are the following 10 motions:

I. AmeriTrust's motion for partial summary judgment on plaintiffs' claims for intentional infliction of emotional distress, negligent infliction of emotional distress, RICO, tortious breach of the covenant of good faith and fair dealing, and the standing of the individual plaintiffs;

II. Associates' motion for summary judgment on causation, standing of the individual plaintiffs, tortious breach of the covenant of good faith and fair dealing, and the issues of the computer loan and sublines;

III. Associates' motion for summary judgment on plaintiffs' RICO claims;

IV. Associates' motion for summary judgment on plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress;

V. Associates Corp. of North America's (ACONA) motion to dismiss;

VI. Associates' motion to strike the jury trial demands of the individual plaintiffs;

VII. Associates' motion for leave to file an Amended Counterclaim against plaintiffs;

VIII. AmeriTrust's motion for leave to file an Amended Counterclaim against plaintiffs;

IX. Associates' motion for leave to file a Third–Party Complaint against Standard's accountants—Dodson & Miller, Artie Miller and Larry Dodson; and

X. AmeriTrust's motion for leave to file a Third–Party Complaint against Standard's accountants—Dodson & Miller, Artie Miller and Larry Dodson.[1]

---

**1.** AmeriTrust made this motion orally at the hearing on September 19, 1988. All other mo-

tions were fully briefed by the parties. AmeriTrust joins in Associates' motions for summary

In addition, the Court considered and decided several issues *sua sponte,* as detailed below.

## PARTIES

In addition to Standard, the Plaintiffs are Dickran Hampikian, Chairman of the Board and 50% shareholder of Standard; Betty Hampikian, his wife; Russell Skrable, President and 50% shareholder of Standard; and Jerrilyn Skrable, his wife.

The Associates defendants are Associates Commercial Corp. and its parent company, Associates Corp. of North America (ACONA). The AmeriTrust defendants are AmeriTrust Corp. and two wholly owned subsidiaries, AmeriTrust Company National Association and AT Commercial Corp.

## FACTS

In August 1982 Hampikian and Skrable purchased Standard in a leveraged buyout. On April 19, 1984, Standard and Associates entered into a secured line of credit agreement. The major terms of the agreement included advances to Standard of up to 85% of its eligible accounts receivable; advances of up to 60% of its eligible inventory and a five-year term loan of $350,000 for a new computer system. Hampikian and Skrable executed personal guarantees on the loan, and issued deeds of trust on their family homes as collateral.

On July 1, 1986, the Business Loans Division of Associates—the division of Associates which extended the subject credit loan to Standard—was purchased by AmeriTrust Corp., which assigned the obligations and duties under the loan agreement with Standard to AmeriTrust Company National Association, a subsidiary of AmeriTrust Corp. A separate subsidiary, AT Commercial Corporation, was then created by AmeriTrust Corp. to manage the Standard loan.

Standard alleges in its Supplemental and First Amended Complaint ("Complaint") against the defendants, *inter alia:*

judgment and to strike the jury trial demand of

1) Associates made fraudulent misrepresentations to induce Standard to enter into the loan agreement;

2) Associates made a separate, oral agreement that the $350,000 computer loan could be funded after December 31, 1984, but then refused to do so;

3) in mid to late 1985 Associates imposed credit sub-lines (ceilings) of $4,000,000 on Standard's inventory and $2,000,000 on accounts receivable;

4) Associates deemed inventory previously "eligible" to be ineligible as security on advances;

5) AmeriTrust dealt with Standard in bad faith and did not recify problems Standard had experienced with Associates, as AmeriTrust had promised;

6) On August 20, 1986 AmeriTrust, without prior notice or discussion, gave Standard written notice of termination of the financing agreement, effective January 17, 1987, thus advancing the loan balance of $4.6 million to be immediately due and thereby forcing Standard into bankruptcy.

## DISCUSSION

I. *AmeriTrust's motion for partial summary judgment on plaintiffs' claims for intentional infliction of emotional distress, negligent infliction of emotional distress, RICO, tortious breach of the covenant of good faith and fair dealing, and the standing of the individual plaintiffs.*

A. Emotional Distress Claims (Nos. 14, 15, 16, 17, 18, 19)

The individual plaintiffs contend that the actions of the defendants have caused plaintiffs to suffer emotional distress. The distress is allegedly the result of the bankruptcy of Standard and the foreclosure proceedings against the plaintiffs' homes.

1. *Intentional Infliction of Emotional Distress (Nos. 14, 15, 16, 17)*

The five requirements of a cause of action for intentional infliction of emotional distress are:

the individual plaintiffs.

1) extreme and outrageous conduct by the defendant;

2) such conduct was intended or done in reckless disregard of the probability of severe emotional distress;

3) the plaintiff suffered severe emotional distress;

4) the plaintiff's severe emotional distress was caused by the defendant's conduct; and

5) the defendant's conduct was unprivileged.

*E.g., Davidson v. City of Westminster*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 649 P.2d 894 (1982).

▆▆▆ Plaintiffs have failed to raise a triable issue of fact as to any of these requirements. Defendants' conduct did not include threats of physical harm, public harrassment or other such conduct which the cases require to be deemed "extreme and outrageous." *See, e.g., Sanchez-Corea v. Bank of America*, 38 Cal.3d 892, 215 Cal.Rptr. 679, 701 P.2d 826 (1985); *cf. Gaffney v. Downey Savings & Loan Ass'n*, 200 Cal.App.3d 1154, 246 Cal.Rptr. 421 (1988). The requisite intent is similarly lacking in the facts presented. The plaintiffs' distress—headaches, insomnia, anxiety, irritability—is not "severe" under California law. The actions of the defendants were privileged because done in pursuit of their lawful business interests, and not outrageous, as just mentioned.

Therefore, summary judgment is properly granted in favor of AmeriTrust and against the individual plaintiffs on their claims for intentional infliction of emotional distress, Nos. 14, 15, 16 and 17. MOTION GRANTED ON THIS GROUND.

## 2. *Negligent Infliction of Emotional Distress (Nos. 18, 19)*

▆▆▆ Plaintiffs Hampikian and Skrable (the husbands) allege defendants' negligent conduct caused them to suffer emotional distress. In California, a claim for negligent infliction of emotional distress can be stated under one of two theories: 1) a plaintiff is a bystander and observes injury to a family member, *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), or 2) a plaintiff is a "direct victim" of a defendant's negligence, *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980) (physician negligently diagnosed plaintiff's wife as having syphilis).

Plaintiffs assert that they are direct victims of defendants' breach of the covenant of good faith and fair dealing, thus giving rise to liability under *Molien*. This argument fails for several reasons. Primarily, plaintiffs cite no authority for the theory that breach of this covenant can compensate for a plaintiff's failure to prove a defendant's negligence. No negligence is alleged here. Nor is plaintiffs' distress sufficiently severe, as stated above. Rather, plaintiffs assert a novel theory, which is unpersuasive and, accordingly, summary judgment in favor of AmeriTrust, and against plaintiffs Hampikian and Skrable, on Nos. 18 and 19 should be granted. MOTION GRANTED ON THIS GROUND.

### B. RICO (Nos. 20, 21, 22)

▆▆▆ Plaintiffs claim defendants have violated RICO, 18 U.S.C. §§ 1962(a) and (b). However, defendants AmeriTrust are entitled to summary judgment against the plaintiffs on these RICO claims because of the absence of any triable issue of fact on the question of whether defendants' conduct constituted a "pattern of racketeering activity."

The Ninth Circuit requires that for a plaintiff to satisfy the pattern of racketeering activity requirement of RICO, it must claim and prove that a defendant's conduct posed a *threat of continuing activity*. *E.g., Medallion Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1365 (9th Cir.1987). Here, plaintiffs allege numerous instances of mail fraud and wire fraud carried out during a three-year period. However, the Ninth Circuit has rejected several RICO claims where the objects of defendants' alleged acts of fraud were performed with respect to a single transaction or victim. *E.,g., Medallion, supra.* The facts of this case more closely resemble *Medallion* and other Ninth Circuit cases which have rejected RICO claims,

*e.g., Schreiber Distributing Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986), than the cases which have permitted RICO claims to stand, *e.g., Sun Savings & Loan v. Dierdorff,* 825 F.2d 187 (9th Cir.1987); *California Architectural Building Products, Inc., v. Franciscan Ceramics, Inc.,* 818 F.2d 1466 (9th Cir. 1987).

Therefore, summary judgment is properly granted in favor of the AmeriTrust defendants and against plaintiffs on the RICO claims, Nos. 20, 21 and 22. MOTION GRANTED ON THIS GROUND.

#### C. Tortious Breach of the Covenant of Good Faith and Fair Dealing (Nos. 4, 5, 6)

■ In California, a plaintiff can allege a tortious breach of the covenant of good faith and fair dealing under any one of three theories: 1) bad faith denial of the existence of a contract, *Seaman's Direct Buying Service, Inc. v. Standard Oil Company of California,* 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984), 2) bad faith breach of an agreement between parties who have a "special relationship," *Wallis v. Superior Court,* 160 Cal.App.3d 1109, 207 Cal.Rptr. 123 (1984), or 3) bad faith denial of liability, *Commercial Cotton Co., Inc. v. United California Bank,* 163 Cal. App.3d 511, 209 Cal.Rptr. 551 (1985).

Only the "special relationship" theory is applicable here. For a special relationship to exist between the parties, the plaintiff must prove each and all of 5 elements:

1) the contract is such that the parties are in inherently unequal bargaining positions;

2) non-profit motivation for the contract;

3) contract damages will not adequately compensate the plaintiff for the breach;

4) plaintiff's vulnerability because of the defendant's position of trust; and

5) defendant's knowledge of plaintiff's vulnerability. *Wallis, supra* 160 Cal. App.3d at 1118, 207 Cal.Rptr. 123.

Plaintiffs must satisfy all of the *Wallis* factors to state a claim. In this case, plaintiffs have not and cannot make such a showing. Notably, plaintiffs bargained at arms length, represented by counsel, for a credit agreement intended to facilitate the increased profitability of their cable and wire business. Nor have plaintiffs indicated the manner in which contract damages will be inadequate here. On these factors alone, the *Wallis* 5–part test has not been satisfied.

Accordingly, the Court will grant AmeriTrust's motion for summary judgment on plaintiffs' claims for tortious breach of the covenant of good faith and fair dealing, Nos. 4, 5 and 6. MOTION GRANTED ON THIS GROUND.[2]

#### D. Standing of Individual Plaintiffs

■ Defendants assert that the individual plaintiffs in this case lack standing because their injuries as shareholders are derivative of Standard's. However, Mssrs. Hampikian and Skrable executed personal guarantees and deeds of trust on their homes as part of the subject transaction. Hence, they may have suffered direct injuries separate from the company's injuries. Consequently, summary judgment on the individual plaintiffs' standing must be denied. MOTION DENIED ON THIS GROUND.

#### II. *Associates' motion for summary judgment on causation, standing of the individual plaintiffs, tortious breach of the covenant of good faith and fair dealing, and the issues of the computer loan and sublines.*

#### A. Causation

■ Associates aver that the gravamen of plaintiffs' Complaint is that the actions of AmeriTrust caused the plaintiffs' injuries, not the actions of Associates, which sold Standard's loan to AmeriTrust in 1986. Yet, plaintiffs make numerous claims of Associates' alleged wrongful conduct be-

---

**2.** Plaintiffs contend that their claims for non-tortious breach of the covenant of good faith and fair dealing survive this motion. However, the Court finds no distinction between such claims and Standard's claim for breach of contract (No. 13).

fore AmeriTrust purchased the loan, including fraud by Associates in inducing Standard to enter into the agreement. Thus, triable issues of fact exist on the question of causation by Associates and, consequently, Associates motion for summary judgment on this issue should be denied. MOTION DENIED ON THIS GROUND.

### B. Standing of Individual Plaintiffs

Associates' motion for summary judgment on the issue of whether the individual plaintiffs have standing should be denied for the reasons stated above with regard to AmeriTrust's motion on this issue. MOTION DENIED ON THIS GROUND.

### C. Tortious Breach of the Covenant of Good Faith and Fair Dealing (Nos. 4, 5, 6)

Associates' motion for summary judgment on plaintiffs' claims for tortious breach of the covenant of good faith and fair dealing should be granted for the reasons stated above with regard to AmeriTrust's motion on this issue.[3] MOTION GRANTED ON THIS GROUND.

### D. Computer Loan and Sublines

■ Plaintiffs and defendants have presented contradictory evidence by way of declarations, depositions and exhibits as to the terms of the financing agreement regarding the $350,000 term loan for computer equipment and defendants' alleged non-contractual basis for imposing the sublines (ceilings on loan advances). Plaintiffs allege and have submitted facts that show certain oral agreements, which are not precluded by the parol evidence rule, existed and extended the availability of the computer loan beyond the December 31, 1984 date specified in the financing agreement. On the other hand, Defendants point to an integration clause in one of the transaction documents, which plaintiffs contend does not apply to the computer loan. Plaintiffs also claim the sublines were imposed in violation of the financing agreement, while defendants assert that plaintiffs suffered

no harm by the imposition of the sublines because plaintiffs never requested advances in excess of the subline amounts. On these matters the parties have raised genuine issues of material fact. F.R.C.P. 56(c). Therefore: MOTION DENIED ON THESE GROUNDS.

### III. *Associates' motion for summary judgment on plaintiffs' RICO claims (Nos. 20, 21, 22).*

Associates' motion for summary judgment against plaintiffs on their RICO claims should be granted for the reasons stated above with regard to AmeriTrust's motion for partial summary judgment on plaintiffs' RICO claims. MOTION GRANTED

### IV. *Associates' motion for summary judgment on plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress (Nos. 14, 15, 16, 17, 18, 19).*

Associates' motion for summary judgment against plaintiffs on their claims for intentional and negligent infliction of emotional distress should be granted for the reasons stated above with regard to AmeriTrust's motion for partial summary judgment. MOTION GRANTED.

### V. *Associates Corp. of North America's (ACONA) motion to dismiss.*

■ Associates Corp. of North America (ACONA) is the parent company of Associates Commercial Corp., the company which made the finance agreement with Standard. Generally, a parent company is not liable for the contracts or torts of its subsidiary, even if wholly owned, unless the parent controls the subsidiary to such a degree as to render the latter a mere instrumentality of the former. *Institute of Veterinarian Pathology, Inc. v. California Health Laboratories, Inc.*, 116 Cal.App.3d 111, 172 Cal.Rptr. 74 (1981).

ACONA's motion to dismiss includes a declaration of Perry Nakachi, Vice Presi-

---

3. *See supra,* note 2.

dent of Associates Commercial Corp. (the subsidiary). Hence, the Court treats this motion to dismiss as a motion for summary judgment. F.R.C.P. 12(b).

It is clear from Nakachi's declaration that ACONA approved the loan transaction with Standard, but was otherwise not responsible for the day to day management of the loan. The Court asked Plaintiffs' counsel at the September 19, 1988 hearing if he could present any evidence to the contrary. Because he stated he was unable to do so, the Court must grant ACONA's motion for summary judgment dismissing ACONA from this case. MOTION GRANTED.

## VI. Associates' motion to strike the jury trial demands of the individual plaintiffs.

██ In their individual guarantees, executed contemporaneously with the other documents in the finance transaction, plaintiffs Hampikian and Skrable waived their right to a jury trial (Exhibits 10 and 12 to Associates' motion for summary judgment). For a jury trial waiver to be effective, it must be knowing, voluntary and intelligent.

██ At the time such guarantees were signed, plaintiffs were represented by counsel, and their counsel reviewed and made revisions to other parts of the documents. Plaintiffs contend that the jury waivers were made only in regard to any dispute over the guarantees and were in very small print in a form presented by Associates. However, all documents executed in a single transaction are be construed together under California law. E.g., Trinity County Bank v. Haas, 151 Cal. 553, 91 P. 385 (1907); Western Fruit Growers, Inc. v. Security Title Insurance & Guaranty Co., 20 Cal.App.2d 150, 66 P.2d 742 (1937). Moreover, the guarantees are at issue in the case; in fact, they provide the basis for Hampikian and Skrable's standing.

With regard to Mrs. Hampikian and Mrs. Skrable, who did not sign personal guarantees, the motion is moot. Their only claims, for intentional infliction of emotional distress, are hereby dismissed pursuant to the summary judgment entered against them, as set forth above in parts I.A.1. and IV.

A jury will decide Standard's legal claims, since Standard did not waive a jury trial. The Court will decide Hampikian and Skrable's claims, both legal and equitable, as well as Standard's equitable claim (No. 23). Similarly, the defendants' respective counterclaims against Standard will be decided by the jury; their counterclaims against Hampikian and Skrable will be decided by the Court. MOTION GRANTED.

## VII. Associates' motion for leave to file an Amended Counterclaim against plaintiffs.

██ Associates move for leave to file an amended counterclaim against Plaintiffs to add causes of action for fraud. The facts which underly the proposed amendment—misrepresentation of the value of Standard's inventory prior to the subject transaction agreement—were discovered by Associates in or about August 1988.

Under F.R.C.P. 15(a), leave to amend shall be freely given as justice requires. These fraud allegations pertain directly to Associates' defense and existing Counterclaim and plaintiffs have not shown discovery by Associates has been dilatory. Accordingly, the Court should grant Associates' motion for leave to file an amended counterclaim against plaintiffs. MOTION GRANTED.

## VIII. AmeriTrust's motion for leave to file an Amended Counterclaim against plaintiffs.

AmeriTrust's motion for leave to file an Amended Counterclaim against plaintiffs is substantially similar to Associates' motion, discussed above, and should be granted for the reasons already stated. MOTION GRANTED.

## IX. Associates' motion for leave to file a Third–Party Complaint against Dodson & Miller, Artie Miller and Larry Dodson (Standard's accountants).

██ Associates move for leave to file a Third–Party Complaint against plaintiffs'

accountants, Dodson and Miller (against the firm and its principals, as individuals). Associates allege that Dodson & Miller prepared fraudulent statements (overvaluing Standard's inventory by $1 million) which were given to Associates prior to the financing agreement in question here.

AmeriTrust opposes the motion on the ground that the addition of such third parties is unnecessary and will cause significant delay in bringing this case to trial, presently scheduled for November 22, 1988. Moreover, AmeriTrust charges that the delay will prejudice AmeriTrust's claims against Standard in the Bankruptcy proceeding before Judge Bufford, in which AmeriTrust is the major creditor.

Since the alleged fraud of plaintiffs' accountants arises out of the same transaction as the Complaint and Counterclaim now before the Court, and to avoid unnecesary expense and multiplicity of litigation, the Court should grant this motion so that the dispute can be resolved in one action. MOTION GRANTED.

X. *AmeriTrust's motion for leave to file a Third–Party Complaint against Dodson & Miller, Artie Miller and Larry Dodson (Standard's accountants).*

AmeriTrust's motion for leave to file a Third–Party Complaint against Dodson & Miller (the firm and its principals, as individuals) should be granted for the reasons heretofore set forth in support of granting Associates' motion for leave to file a Third–Party Complaint against the same parties. MOTION GRANTED.

### ADDITIONAL ORDERS

In addition to the resolution of the above motions, the Court, *sua sponte*, orders:

1) plaintiffs to file by September 30, 1988 a Second Amended Complaint, in which the present fraud causes of action (Nos. 1, 2 and 3) be CONSOLIDATED into a single cause of action, and the present constructive fraud causes of action (Nos. 7, 8 and 9) be CONSOLIDATED into a single cause of action;

2) breach of fiduciary and constructive fraud causes of action (Nos. 10, 11 and 12) are DISMISSED with prejudice for failure to state claims independent of the constructive fraud causes of action which are Nos. 7, 8 and 9;

3) defendants to file their Answers, Amended Counterclaims and Third–Party Complaints by October 7, 1988;

4) the pre-trial and trial dates of October 17, 1988 and November 22, 1988, respectively, are hereby VACATED; and

5) all parties are to appear before this Court for a Mandatory Status Conference on November 7, 1988, in order that the Court may clarify the relationship and affect of Standard's bankruptcy proceeding upon this District Court action, to assess the delay, if any, caused by the filing of defendants' Third–Party Complaints and to set new Pre-trial Conference and Trial dates.

### CONCLUSION

After argument, and the Court having fully analyzed and considered all of the papers and pleadings filed herein, the aforesaid motions are decided as hereinabove set forth. Summary Table of Claims and Dispositions Attached.

SO ORDERED.

### Summary Table of Claims and Dispositions

| No. | Cause of Action | Plaintiff | Disposition |
|-----|-----------------|-----------|-------------|
| 1 | fraud | Standard | consolidate |
| 2 | fraud | Hampikian | consolidate |
| 3 | fraud | Skrable | consolidate |
| 4 | brch cov gd faith | Standard | grant s/j |
| 5 | brch cov gd faith | Hampikian | grant s/j |
| 6 | brch cov gd faith | Skrable | grant s/j |
| 7 | constructive fraud | Standard | consolidate |

| No. | Cause of Action | Plaintiff | Disposition |
|-----|-----------------|-----------|-------------|
| 8 | constructive fraud | Hampikian | consolidate |
| 9 | constructive fraud | Skrable | consolidate |
| 10 | breach of fid. duty | Standard | dismiss w/prej |
| 11 | constructive fraud | Hampikian | dismiss w/prej |
| 12 | constructive fraud | Skrable | dismiss w/prej |
| 13 | breach of contract | Standard | unchanged |
| 14 | intl infl emo dist | Hampikian | grant s/j |
| 15 | intl infl emo dist | Skrable | grant s/j |
| 16 | intl infl emo dist | Mrs. Hampikian | grant s/j |
| 17 | intl infl emo dist | Mrs. Skrable | grant s/j |
| 18 | neg infl emo dist | Hampikian | grant s/j |
| 19 | neg infl emo dist | Skrable | grant s/j |
| 20 | RICO | Standard | grant s/j |
| 21 | RICO | Hampikian | grant s/j |
| 22 | RICO | Skrable | grant s/j |
| 23 | decl. relief | Std, H, S | unchanged |
| 24 | equitable subord | H, S | unchanged |
| 25 | decl. relief | H, S | unchanged |