The **CONNECTICUT NATIONAL BANK**
d/b/a **Shawmut Bank of Rhode
Island, Plaintiff**

v.

Christopher H. **SMITH** and Continental
Precision, Inc., Defendants and
Third–Party Plaintiffs

v.

Thomas **HOLLIS** and Hollis, Weaver
Campion & Co., Third–Party
Defendants

Civ. A. No. 92–0529L.

United States District Court,
D. Rhode Island.

July 14, 1993.

Barbara S. Cohen, Goldenberg & Muri, Providence, RI, for plaintiff.

William H. Jestings, John P. McCoy, Carroll, Kelly & Murphy, Providence, RI, Peter S. Brooks, Brooks and Brooks, Sherborn, MA, John R. Mahoney, Providence, RI, John W. Kershaw, Rice, Dolan & Kershaw, Providence, RI, for third-party defendants.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on a motion by plaintiff, The Connecticut National Bank d/b/a Shawmut Bank of Rhode Island ("Shawmut"), for an Order striking defendants' demand for a jury trial. Plaintiff contends that defendants contractually waived their rights to a jury trial. Defendants object to plaintiff's motion, arguing that the waiver clauses in the Guaranties which they executed cannot be enforced in these proceedings.

### BACKGROUND

This action arises out of a lending transaction in which Shawmut (then known as People's Bank, National Association) advanced money to Precision Machine Company, Inc. ("Precision Machine"). On April 12, 1988, Shawmut and Precision Machine entered into a Loan and Security Agreement pursuant to which Shawmut agreed to lend Precision Machine up to $450,000 on a revolving loan basis and $300,000 on a term loan basis. The two defendants, Christopher H. Smith and Continental Precision, Inc. ("Continental"), each executed a document guaranteeing the repayment of the sum advanced to Precision Machine (the "Guaranties"). Smith, who was the president of Continental, signed both the Guaranty obligating himself individually and the Guaranty obligating Continental. Importantly, at the time of the loan transaction, Smith was an experienced businessman and attorney. He graduated from Yale Law School in 1963 and subsequently served as a law clerk for both the United States Court of Appeals for the District of Columbia and the Supreme Court of the State of Connecticut. Thereafter, he joined the law firm of Whitman & Ransom in New York City, where, after working as an associate for approximately four years, he became a partner. Additionally, Mr. Smith has served as the president and/or chief executive officer ("CEO") of several substantial corporations, including Barnes Engineering Company, FAG Bearing Corporation, and Puma U.S.A.

The two defendants executed Guaranties containing identical terms. The Guaranties consisted of four standardized pages, three pages of which were text. On the fourth page, just a few inches above the guarantor's signature, the Guaranties contained what purported to be a jury waiver clause. Specifically, in paragraph 9(e) the documents stated: "[I]n any action hereunder the undersigned waives the right to demand a trial by jury." In connection with the signing of these Guaranties, both defendants were represented by counsel, Donald L. Conway. Attorney Conway reviewed the loan documents, including the Guaranties, and issued an opinion letter regarding the loan transaction. Thereafter, on April 12, 1988, Smith executed the Guaranties on behalf of himself and Continental.

In June 1990, the loan between Shawmut and Precision Machine was restructured. Shawmut agreed to lend Precision Machine up to $700,000 on a revolving basis and $400,000 on a term loan basis. Defendant Smith alleges that he was not informed of or consulted about the new loan terms. Subsequently, Precision Machine defaulted on its obligations to Shawmut. The corporation acknowledged its default in or about September 1991. The defendants have not paid Shawmut the amount due and owing on the Precision Machine loan.

Shawmut filed this action on October 5, 1992, alleging that defendants breached the Guaranties. On October 28, 1992, defendants filed both an Answer denying liability and a Counterclaim. In the Counterclaim defendants allege that they have been discharged from the Guaranties, that Shawmut is estopped from asserting the Guaranties against the defendants, and that Shawmut breached a fiduciary obligation it owed to defendants as guarantors. Defendants request a judgment declaring that there are no amounts

due and owing under the Guaranties. Additionally, in their Counterclaim, defendants assert a demand for a trial by jury. Plaintiff now moves to strike defendants' jury demand. Defendants object to plaintiff's motion.

After hearing oral arguments, the Court took this matter under advisement. It is now in order for decision. For the reasons that follow, the Court determines that the jury waiver clauses are enforceable in this action, and thus grants plaintiff's motion to strike defendants' demand for a jury trial.

## DISCUSSION

### I. Legal Standard

Plaintiff has moved for an Order to strike defendants' jury demand. Rule 39(a) of the Federal Rules of Civil Procedure provides:

> When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record ... consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

Thus, upon plaintiff's motion, the Court must determine whether defendants have rights under the Constitution or statutes of the United States to a trial by jury in this case. The Court notes that, as this case involves a breach of contract suit for damages, if defendants did not waive their rights, the Seventh Amendment entitles them to a trial by jury on the factual issues. *See Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1563 (Fed.Cir.1990) (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991). The question which the Court must resolve, therefore, is whether or not defendants waived their rights to a jury trial in this case.

### II. Jury Waiver Clauses: Knowing and Voluntary Waiver

#### A. Legal Guidelines

The Seventh Amendment to the United States Constitution guarantees the right to a trial by jury in many civil cases. Nonetheless, it is axiomatic that, if done so knowingly, intentionally, and voluntarily, parties to a contract can waive this fundamental right. *Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 832 (4th Cir.1986); *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir.1985); *National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977); *National Westminster Bank v. Ross,* 130 B.R. 656, 667 (S.D.N.Y.1991), *aff'd sub nom., Yaeger v. National Westminster,* 962 F.2d 1 (2d Cir.1992). As several courts have noted, contractual agreements waiving the right to trial by jury are neither illegal nor contrary to any abstract public policy. *Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837 (10th Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Okura & Co. v. Careau Group,* 783 F.Supp. 482, 488 (C.D.Cal.1991) (citing J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice,* ¶ 38.46 (2d ed. 1985)); *Chase Commercial Corp. v. Owen,* 32 Mass.App.Ct. 248, 588 N.E.2d 705, 709 (1992) (jury trial waivers, which "offer at least the potential of somewhat less costly and complicated litigation in the event of a dispute," are not unconscionable or against public policy). Further, courts have repeatedly enforced contractual jury waivers in loan agreements and loan guaranties. *See, e.g., Okura & Co.,* 783 F.Supp. at 489; *National Westminster Bank,* 130 B.R. at 667; *Standard Wire & Cable Co. v. AmeriTrust Corp.,* 697 F.Supp. 368, 375 (C.D.Cal. 1988); *In re Reggie Packing Co.,* 671 F.Supp. 571, 574 (N.D.Ill.1987); *Chase Commercial Corp.,* 588 N.E.2d at 709.

All courts agree that a contractual jury waiver provision is enforceable only if it was entered into "knowingly and intentionally" or "knowingly and voluntarily." However, there is some disagreement about which party bears the burden of proving knowing and voluntary consent, or lack thereof. *Compare Leasing Serv. Corp.,* 804 F.2d at 833 (party seeking enforcement of waiver

must prove that consent was knowing and intentional); *National Equipment Rental,* 565 F.2d at 258 (same); *Dreiling v. Peugeot Motors of America, Inc.,* 539 F.Supp. 402, 403 (D.Colo.1982) (same) *with K.M.C. Co.,* 757 F.2d at 758 (party seeking to avoid waiver must prove that consent to provision was not knowing and voluntary). This Court, however, need not decide this disputed issue for, as discussed below, regardless of which party bears the burden of proof, plaintiff has adduced sufficient evidence to establish that defendants' waiver was knowing and voluntary.

### B. Applying the Law to the Facts

■ Numerous factors lead the Court to conclude that defendants knowingly, voluntarily, and intentionally consented to the jury waiver provision. First, defendants are sophisticated parties who were represented by counsel in this transaction, factors which courts have considered important in deciding to enforce jury waiver clauses. *See, e.g., Telum, Inc.,* 859 F.2d at 837; *Leasing Serv. Corp.,* 804 F.2d at 833; *National Westminster Bank,* 130 B.R. at 667; *In re Reggie Packing Co.,* 671 F.Supp. at 573; *Bonfield v. AAMCO Transmissions, Inc.,* 717 F.Supp. 589, 595 (N.D.Ill.1989); *Standard Wire & Cable Co.,* 697 F.Supp. at 375; *Chase Commercial Corp.,* 588 N.E.2d at 709. Smith, who signed the Guaranties on behalf of both defendants, was well versed in financial transactions. As noted above, he graduated from Yale Law School in 1963, served as a law clerk for two years, and had been a practicing attorney in a variety of business fields for many years. Additionally, he had been president and/or CEO of a number of substantial corporations and had participated in complex financial transactions on behalf of these companies. Further, defendants' counsel in the transaction specifically reviewed the loan documents, including the Guaranties, before the defendants executed the Guaranties.

Defendants argue that they were the victims of unequal bargaining power because they had to sign preprinted Guaranty forms in order for Precision Machine to qualify for a loan from Shawmut. The Court does not accept this economic duress type of argument. While courts consider equality of bargaining power in determining if consent to waiver was knowing and intentional, the facts here refute the existence of the sort of "extreme bargaining disadvantage" or "gross disparity in bargaining position" that can render a waiver invalid. Even if defendants believed that they could not alter the preprinted form, "[t]his is not the kind of case that supports a 'necessitous men are not free men' approach ... [or] calls on a court to rescue [defendants] from [their] contract[s]...." *Bonfield,* 717 F.Supp. at 596 (enforced jury waiver clause in contract for franchise despite fact that franchisor would not accept changes in its contract); *see also, e.g., Seaboard Lumber Co.,* 903 F.2d at 1564 (contractual waiver of Article III and Seventh Amendment rights enforced despite fact that contracts in question were "take it or leave it" offers). Additionally, as in other cases in which jury waiver clauses have been enforced, any inequality that might have existed was counter-balanced by the defendants' sophistication and retention of counsel to oversee the transaction. *See, e.g., Telum, Inc.,* 859 F.2d at 837; *Leasing Service Corp.,* 804 F.2d at 833; *Smyly v. Hyundai Motor America,* 762 F.Supp. 428, 430 (D.Mass. 1991); *In re Reggie Packing Co.,* 671 F.Supp. at 573.

Although defendants have not specifically argued that they were not aware of the jury waiver clauses, they contend that the clauses cannot be enforced because they were inconspicuously buried in small print on the last page of the Guaranties. Despite defendants' claim, the Court determines that the jury waiver provisions were neither inconspicuous nor buried. While the clauses were not set out in their own paragraphs or written in bold print, "[t]here are no special requirements ... for setting off or highlighting a jury waiver clause in a contract." *In re Reggie Packing Co.,* 671 F.Supp. at 573; *see also, e.g., Leasing Serv. Corp.,* 804 F.2d at 833 (jury waiver provision enforced although neither set off in own paragraph nor highlighted); *N. Feldman & Son, Ltd. v. Checker Motors Corp.,* 572 F.Supp. 310, 312–13 (S.D.N.Y.1983) (same). On the other hand, the Court is persuaded by the fact that,

unlike in *Dreiling,* 539 F.Supp. at 403, where the jury waiver clause was on the twentieth page of a twenty-two page standardized form, the Guaranties here were only four pages long, and contained only three pages of text; the language of the jury waiver clauses was clear and definite; the jury waiver clauses were located at the end of a paragraph, only two inches above the guarantors' signatures; and, while the clauses were set forth in fairly small print, they were entirely legible and were the same size as every other clause in the contract. A number of courts have relied on similar reasoning in determining that consent to a jury waiver clause was knowing and intentional. *See, e.g., Leasing Serv. Corp.,* 804 F.2d at 833 (although jury waiver provision was in fine print in the middle of a thirty-eight line paragraph on reverse side of standardized document, in upholding district court's finding of waiver, court was influenced by fact that contract was only two pages long); *National Westminster Bank,* 130 B.R. at 667 (in determining that consent to jury waiver provision was knowing and voluntary, court noted that provision was only two inches above the signature and, like the balance of the guaranty, was printed in small but entirely legible text); *In re Reggie Packing Co.,* 671 F.Supp. at 573 (in enforcing jury waiver clause, court highlighted fact that contract was only three pages long, the waiver appeared just two inches above parties' signatures, and clause was in same type of print as all other contract terms); *Chase Commercial Corp.,* 588 N.E.2d at 708–09 (enforced jury waiver clauses set forth in clear language, in legible print, on signature pages of documents that were only four pages long).

### III. Applicability of Jury Waiver Clauses to the Present Case

■ Having determined that the defendants knowingly, voluntarily, and intentionally consented to the jury waiver clauses in the Guaranties, the Court must next determine whether these jury waiver clauses are applicable to the present case. At the outset, the Court notes that the language of the waiver is broad; the guarantors agreed to waive the right to demand a trial by jury "in any action" under the Guaranties. Clearly, that covers plaintiff's claim that defendants breached the Guaranties. Additionally, that language also applies to defendants' Counterclaim. As noted above, in their Counterclaim, defendants contend that they have been discharged from the Guaranties, that Shawmut is estopped from asserting the Guaranties against them, and that Shawmut breached a fiduciary duty owed to them as guarantors. Each count of the Counterclaim seeks a declaration that there is no amount due and owing on the Guaranties. Thus, as defendants' claims are based on the Guaranties and the relief they seek directly involves the Guaranties, their claims are subject to the jury trial waiver. *See, e.g., Okura & Co.,* 783 F.Supp. at 488–90 (jury waiver provision applied to counterclaims seeking finding that parties were not liable on guaranties); *National Westminster Bank,* 130 B.R. at 667–68 (jury waiver clause in guaranty applies to guarantor's counterclaims against bank).

■ Along different lines, defendants argue that the jury waiver clauses in the Guaranties cannot be enforced in this proceeding because the Guaranties themselves are no longer applicable. Defendants contend that the 1990 restructuring of the loan between Shawmut and Precision Machine renders the Guaranties executed in 1988 null and void. Plaintiff responds that the Guaranties remain in force regardless of any modification, amendment, supplementation, or extension of the loan agreement between Shawmut and Precision Machine, and any alleged modification has no bearing on the enforcement of the jury waiver clauses in this case. It is to be noted that the Guaranties, at paragraph 3, state:

> The undersigned hereby agrees and acknowledges that ... with or without notice to or further assent from the undersigned: (i) any contract or agreement to which any Borrower ... is a party, may be modified, supplemented, extended, amended or terminated in any manner; ... (iii) all or any part of the Obligations ... may be changed, altered, renewed, extended, continued, surrendered, compromised, waived, terminated or released in whole or in part ...; and (v) Bank may extend further credit in any manner whatsoever to any

Borrower, and generally deal with any Borrower ... as Bank may, in its sole and absolute discretion, determine. The undersigned agrees that notwithstanding any of the foregoing actions the undersigned shall remain bound under this Guaranty....

In any event, the Court is satisfied that the question of whether defendants are obligated to plaintiff under the Guaranties requires direct analysis of the Guaranties, and is clearly a critical question "in [an] action" under the Guaranties. Therefore, although the Court, at this stage, makes no definitive determination about the effect of a modification on the enforceability of the Guaranties, the Court agrees with plaintiff that the jury waiver clauses apply in this case.

## CONCLUSION

For the foregoing reasons, the Court determines that the jury waiver clauses in the Guaranties executed by each defendant are enforceable and applicable to this case. Therefore, the Court grants plaintiff's motion to strike defendants' demand for a jury trial.

It is so Ordered.