The **COOPERATIVE FINANCE ASSOCIATION, INC.,** Plaintiff,

v.

**David GARST and Marilyn Garst, Defendants.**

**David GARST, Plaintiff,**

v.

The **COOPERATIVE FINANCE ASSOCIATION, INC.,** Defendant.

No. C 94–3052.

United States District Court, N.D. Iowa, Central Division.

Jan. 6, 1995.

Mark A. Shaiken and Stephanie J. Quincy of Stinson, Mag & Fizzell, P.C., Kansas City, MO, and Rodney P. Kubat of Whitfield & Eddy, P.L.C., Des Moines, IA, for Cooperative Finance Ass'n Inc.

Peter C. Riley, of Tom Riley Law Firm, Cedar Rapids, IA, for David Garst.

## ORDER STRIKING JURY DEMAND

BENNETT, District Judge.

This matter comes before the court pursuant to plaintiff/counterclaim defendant's November 10, 1994, motion to strike jury demand (docket number 16). Defendant and counterclaim plaintiff David Garst filed a counterclaim in this action on October 6, 1994. That same date, David Garst also filed a demand for jury trial on the counterclaim. Plaintiff and counterclaim defendant Cooperative Finance Association, Inc. (CFA), filed a motion to strike the jury demand on November 10, 1994.

No timely resistance to the motion to strike jury demand was filed. On November 28, 1994, the court, however, recognizing a split in authority as to which party, the one asserting the waiver or the one opposing it, has the burden of proving waiver, and believing that the present matter was of sufficient moment, involving as it does a fundamental right, required the parties to brief the issue of waiver in light of the applicable principles articulated in the court's order. On December 14, 1994, therefore, Garst filed his Brief in Support of Resistance to Motion to Strike Demand for Jury Trial. CFA filed its Reply

Memorandum in Support of Motion to Strike Jury Demand on December 22, 1994.

Neither party has requested an evidentiary hearing on the matter presented here. In fact, Garst specifically requests a ruling without further hearing, asserting that CFA cannot present sufficient evidence to satisfy the presumption that Garst's waiver of jury trial was knowing and voluntary. Although Garst identifies "facts" he states he would establish if the court held an evidentiary hearing, he has not provided any affidavits or other documentary evidence in support of these "facts." CFA, however, has attached to its Reply Memorandum the affidavit of Tommy R. Collins, the loan officer for the original 1991 loan in question in these proceedings, and copies of both the 1991 and 1993 loan agreements. In light of the submissions of the parties, the court concludes that this matter is now fully submitted.

## I. FACTUAL BACKGROUND

Both the principal claim and the counterclaim in this litigation arise out of a loan to Garst of $865,000 by CFA's predecessor, Farmland Financial Services Company. CFA's complaint seeks payment of amounts due and owing under the note and loan agreement for this loan. Garst's counterclaim alleges violations by CFA of the loan agreement and seeks damages. CFA asserts that Garst waived jury trial of any matter "arising out of or in any way connected with the Loan or this Loan Agreement" under the terms of the loan agreement itself. CFA asserts that Garst's waiver of jury trial was made knowingly and voluntarily.

Garst is a general partner with Orb Greenwald, Garst's wife's son-in-law, in a general partnership known as Double G Ranch. The note and loan agreement in question here were executed to provide financing for Double G Ranch. The parties agree that the current loan agreement, executed on February 12, 1993, was intended as a renewal of a prior loan agreement, executed January 28, 1991, and additionally increased the credit

line available to Double G Ranch. Both the 1991 and 1993 loan agreements contain identical jury waiver provisions, near the end of each four-page loan agreement, set off in its own paragraph, in type identical to that of every other provision of the loan agreements. The jury waiver provision in each loan agreement is as follows:

> It is mutually agreed by and between Borrower and Lender that the respective parties waive trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other on any matter whatsoever arising out of or in any way connected with the Loan or this Loan Agreement.

In addition, each loan agreement bears immediately after this jury waiver provision,[1] in bold type, the following provision:

> **Important: Read before signing. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this agreement only by another written agreement. This notice is also effective with respect to all other credit agreements between the parties hereto.**

In each case, the paragraph in bold is the last paragraph before the signatures of the parties.

In his Brief, Garst asserts that he entered into the 1993 loan agreement against his will, and despite deterioration in his relationship with his partner, at the request of his wife, his partner's mother-in-law. Garst alleges that it was his understanding that signing the 1993 loan agreement was a condition for obtaining necessary new financing. He also asserts that he did not see the jury waiver provision in the 1993 loan agreement, and had he known it was there, he would have refused to sign the agreement. Garst asserts that even then he "recognized" that he had a potential claim against CFA, and would have wanted it tried to a jury. Garst states

---

1. In the 1991 loan agreement there is an additional one-line paragraph between the jury waiver provision and the paragraph in bold. The additional paragraph states in its entirety, "This Loan Agreement shall be governed by and construed and enforced in accordance with the laws of the State."

that the jury waiver provision was not the subject of any negotiation between the parties, and that he was not represented by any legal counsel in connection with the agreement. However, Garst "freely admit[s] he would be considered knowledgeable and sophisticated in business matters." Garst's Brief, p. 3. Garst also asserts that he could produce loan agreements in which the jury waiver is more prominently displayed.

CFA argues that the circumstances of the signing of the 1991 loan agreement are relevant to consideration of Garst's signing of a nearly identical loan agreement, containing the same jury waiver provision, because the 1993 agreement was a renewal of the 1991 agreement with an extension of additional credit. In his affidavit, Tommy R. Collins states that at the time the 1991 agreement was executed, he specifically reviewed the terms of the agreement with Garst and asked him to review it before signing. He states that to the best of his recollection, Garst reviewed the document on his own before signing it. Collins states that at no time did he indicate that the 1991 loan agreement or any of its terms were not negotiable. Collins also states that at the time of the 1991 agreement, he believed that Garst had other sources of financing available to him as alternatives to the loan from Farmland Financial Services Company, and that at the time of the 1993 agreement renewing the prior loan he did not believe that Garst was in a "distressed position." Collins also states that at no time did Garst request deletion or modification of the jury waiver provisions in either the 1991 or 1993 agreement.

## II. LEGAL ANALYSIS

The Seventh Amendment preserves a right to a jury trial on issues of fact in suits for breach of contract damages between private party litigants. *Northern Pipeline Constr. Co. v. Marathon Pipe Line*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed.Cir.1990). However, a party may waive its right to a jury trial either expressly or impliedly. *Commodity Futures Trade Comm. v. Schor*, 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675

(1986); *Seaboard Lumber*, 903 F.2d at 1563. Parties may waive a jury either expressly or impliedly under the terms of a contract between them. *Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l*, 373 F.2d 136, 142 (8th Cir.), *cert. denied*, 389 U.S. 827, 88 S.Ct. 77, 19 L.Ed.2d 83 (1967) (acceptance of a contract provision providing for dispute resolution in a forum where there is no entitlement to a jury trial is implied waiver of jury trial and satisfies the voluntary and knowing standard); *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir.1986) (contract clause expressly waived jury trial); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755–56 (6th Cir.1985) (same). Contractual waivers of the right to a jury trial are neither illegal nor contrary to public policy. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir.1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). Such waivers in loan agreements and loan guarantees are regularly enforced. *See, e.g., Connecticut Nat'l Bank v. Smith*, 826 F.Supp. 57, 59 (D.R.I.1993); *Okura & Co. v. Careau Group*, 783 F.Supp. 482, 488 (C.D.Cal.1991); *Standard Wire & Cable Co. v. AmeriTrust Corp.*, 697 F.Supp. 368, 375 (C.D.Cal.1988); *In re Reggie Packing Co.*, 671 F.Supp. 571, 574 (N.D.Ill.1987); *Nat'l Westminster Bank v. Ross*, 130 B.R. 656, 667 (S.D.N.Y.1991), *aff'd sub nom. Yaeger v. Nat'l Westminster Bank*, 962 F.2d 1 (2d Cir.1992).

For a waiver to be effective, the party waiving the right must do so "voluntarily" and "knowingly" based on the facts of the case. *Brookhart v. Janis*, 384 U.S. 1, 4–5, 86 S.Ct. 1245, 1246–47, 16 L.Ed.2d 314 (1966); *Seaboard Lumber*, 903 F.2d at 1563; *Leasing Serv. Corp.*, 804 F.2d at 833; *K.M.C. Co.*, 757 F.2d at 755–56 (listing jurisdictions applying this standard). "[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937); *Wauhop v. Allied Humble Bank, N.A.*, 926 F.2d 454, 455 (5th Cir.1991); *Leasing Serv. Corp.*, 804 F.2d at 832 (seventh amendment right is fundamental one).

There is a split in the circuits as to which party, the one asserting waiver, or the one

denying it, bears the burden of showing that a contractual waiver was or was not knowing and voluntary. *See, e.g., Hulsey v. West,* 966 F.2d 579, 581 (10th Cir.1992) (identifying the split among the circuits); *and compare Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 833 (4th Cir.1986) ("Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed."), *with K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 758 (6th Cir.1985) ("We agree that in the context of an express contractual waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary.").

Courts have considered a number of factors to determine whether a contractual waiver of the right to a jury was knowing and voluntary. They have considered whether the waiver provision is on a standardized form agreement or newly-drafted document, in fine print or in large or bold print, set off in a paragraph of its own, in a take-it-or-leave-it or negotiated contract, and the length of the contract. *See, e.g., Leasing Serv. Corp.,* 804 F.2d at 833 (waiver provision in fine print, not set off in a paragraph of its own, on back of standardized agreement); *Phoenix Leasing, Inc. v. Sure Broadcasting, Inc.,* 843 F.Supp. 1379, 1384–85 (D.Nev.1994) (opportunity to negotiate terms, conspicuousness of provision); *Connecticut Nat'l Bank,* 826 F.Supp. at 60–61 (court considered parties' ability to negotiate terms or only to accept preprinted contract, conspicuousness of provision in light of print size and length of contract, and surveying application of these and other factors by other courts). They have also considered whether the waiving party was represented by counsel, whether the waiving party was a sophisticated business person aware of the consequences of the waiver, whether the parties were manifestly unequal in bargaining power, and whether there was an opportunity to review all of the terms of the contract and whether the waiving party did so. *See, e.g., Leasing Serv. Corp.,* 804 F.2d at 833 (parties not manifestly unequal in bargaining power and sophistication in business, participated in extensive negotiations, and carefully reviewed entire contract); *Connecticut Nat'l Bank,* 826 F.Supp. at 60–62 (court considered sophistication of parties, representation by counsel, equality of bargaining power).

■■■ The court finds that it need not resolve the issue of which party bears the burden in a challenge to the voluntariness of a jury waiver, because if Garst bears that burden, he has failed to carry it, and if CFA bears that burden, it has succeeded in carrying it.[2] First, examining the jury waiver provision itself, the court finds that its terms are clear and comprehensive, that the provision is set off in a paragraph of its own, in identical type face to other provisions, and near the end of a short document just before the signatures and just before a warning to read the entire document.

Turning to the circumstances in which the 1993 agreement was executed, Garst has freely admitted that he is a sophisticated and experienced businessman, and nothing in the record suggests that Garst could not have negotiated any provision of the contract. Garst's allegations that he was compelled by family considerations to enter into the agreement do not negate his ability to review and negotiate the terms of the agreement. There is no evidence that Garst could not have sought renewal or replacement financing elsewhere if he had objected to the terms of CFA's loan; to the contrary, CFA has demonstrated that it did not consider Garst's or Double G Ranch's financial position to be "distressed," or that Garst had no recourse for financing but CFA. CFA has demonstrated that there was no significant inequali-

---

2. The court believes, however, that the burden should properly rest with the party asserting the waiver, because it is the party seeking to benefit from the waiver. *See, e.g., Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 833 (4th Cir.1986) ("Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed."). The party seeking to enforce a waiver can prepare to meet that burden by careful drafting of the provision, its conspicuous presentation, and preparation of a record that the provision was explained and reviewed, for example, by requiring that the provision be initialled.

ty of bargaining power, from the distressed condition of the borrower, his lack of sophistication in business matters, or unfamiliarity with the exact kind of transaction in question, in this case such that the jury waiver provision should be disregarded.

■ The court does believe that the circumstances in which the 1991 agreement were executed are also relevant here, because the 1993 agreement was a renewal, in nearly identical terms, of the 1991 loan arrangement. Garst had previously entered into the loan agreement with CFA's predecessor under circumstances in which the record demonstrates that he had the opportunity to review the document and willingly agreed to all of its provisions. Garst's prior agreement to the jury waiver terms in these circumstances shows that Garst was aware that such terms were common and that he did not find them repugnant. CFA correctly argues that the fact that Garst had "previously been a party to a similar agreement with [the lender] containing the same jury waiver provision" supports the conclusion that Garst knowingly and willing waived his right to a jury trial. *N. Feldman & Son, Ltd. v. Checker Motors Corp.*, 572 F.Supp. 310, 313 (S.D.N.Y.1983).

### III. CONCLUSION

The court concludes that Garst knowingly and voluntarily agreed to the jury waiver provisions in the 1991 and 1993 loan agreements. Therefore, CFA's motion to strike jury demand on Garst's counterclaim is granted.

**IT IS SO ORDERED.**