CHASE COMMERCIAL CORPORATION *vs.* MORTON I. OWEN
& another.[1]

No. 90-P-784.

Suffolk. January 15, 1992. - March 20, 1992.

Present: BROWN, FINE, & IRELAND, JJ.

*Guaranty. Contract*, Loan, Waiver, Validity. *Practice, Civil*, Jury trial.
*Constitutional Law*, Trial by jury. *Waiver*.

In an action on a guaranty agreement, the defendants were bound by pro-
visions in two loan and security agreements waiving the right to a jury
trial although, except for one of the defendants in his representative
capacity, they did not sign those agreements, and although the guar-
anty agreement, which both did sign, contained no such waiver provi-
sion, where a judge properly concluded that the three documents were
part of a single transaction and were to be read together, and that,
therefore, the plaintiff and the defendants waived a jury trial in all
claims relating to the transaction. [250-251]

A provision in two loan and security agreements, whereby the parties to
the agreements waived their right to trial by jury in the event of a
dispute, was enforceable, where there was no showing that the provision
was unconscionable, contrary to public policy, or unfair in the circum-
stances. [251-254]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 27, 1984.

A motion to strike the defendants' claim to trial by jury
was heard by *John L. Murphy, Jr.,* J.; the case was heard by
*J. Owen Todd,* J., and a motion for a new trial was heard by
him.

*Michael P. Pagnozzi* (*Lewis P. Aronson* with him) for the
defendants.

*Barry Y. Weiner* for the plaintiff.

FINE, J. This appeal concerns the claim of the defendants,
parties to a contract dispute, that they were improperly de-

---

[1]Joseph A. Ippolito.

nied a jury trial. The issue is presented in the following context.

On September 6, 1983, the plaintiff, Chase Commercial Corp. (Chase), made a substantial loan, secured by liens on assets, to the G.S.F. Corporation (G.S.F.). At the same time the loan documents were executed, the defendants, Morton I. Owen and Joseph A. Ippolito, the principals of G.S.F., agreed to guarantee the corporation's indebtedness to Chase. Both of the documents comprising the loan and security agreement were signed on behalf of G.S.F. by Ippolito as president and included a provision whereby G.S.F. and Chase waived their right to trial by jury in the event of a dispute under the agreement. The guaranty agreement, signed by both Owen and Ippolito individually, contained no such provision. In November of 1984, G.S.F. became bankrupt, leaving a substantial outstanding balance unpaid, and Chase brought suit against the defendants on the guaranty. The defendants filed an answer denying the indebtedness and raising numerous counterclaims. The answer also included a demand for trial by jury.

Chase moved for summary judgment on its claim and on the defendants' counterclaims. At the same time, Chase moved to strike the defendants' demand for a jury trial. The motion judge allowed Chase's motion for summary judgment as to the defendants' liability and as to several of the counterclaims, leaving for trial the amount of damages owed by the defendants and Chase's possible liability on the remaining counterclaims. The motion judge also ruled on the motion to strike the defendants' demand for a jury trial. Finding no evidence of overreaching, and presuming the defendants to be "sophisticated businessmen . . . familiar with the terms of the instruments they sign," the judge allowed the motion.

Several additional counterclaims were dismissed by agreement of the parties, and the case proceeded to trial without jury. The judge issued a memorandum of decision incorporating his findings and rulings and ordered judgment to be entered against each defendant in the amount of $1,061,784. After judgment was entered, the defendants raised the issue

of their right to a jury trial once again by a motion for new trial, which was denied. No issue is raised on appeal concerning the validity of any ruling on summary judgment or any finding or ruling made on the basis of the trial. The only contention on appeal is that the defendants were entitled to a jury trial.[2]

1. *Was the jury waiver clause part of the defendants' contract*? The defendants first contend that they are not bound by the provisions in the two loan and security agreements waiving the right to a jury trial because, except for Ippolito in his representative capacity, they did not sign those agreements, and the guaranty agreement, which both did sign, contained no such provision. In addition, the guaranty agreement did not incorporate the entire loan and security agreements by reference. Compare *J. & S. Constr. Co. v. Travelers Indem. Co.*, 520 F.2d 809, 810 (1st Cir. 1975); *United States Fid. & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir. 1988); *Hoffman v. Fidelity & Deposit Co.*, 734 F. Supp. 192, 194-195 (D.N.J. 1990). Nevertheless, if the three documents were in essence part of one transaction, they must be read together to effectuate the intention of the parties. See *Kearsarge Metallurgical Corp. v. Peerless Ins. Co.*, 383 Mass. 162, 166-168 (1981) (applying New Hampshire law). See also *Chelsea Indus., Inc. v. Florence*, 358 Mass. 50, 55 (1970); *Gilmore v. Century Bank & Trust Co.*, 20 Mass. App. Ct. 49, 56 (1985); *Fred S. James & Co. of New England v. Hoffmann*, 24 Mass. App. Ct. 160, 164 (1987).

---

[2] Chase contends that we need not even reach the issue whether the defendants were entitled to a jury trial because all of the issues raised by the pleadings were resolved either by summary judgment, voluntary dismissal, or, after trial, on the basis of the defendants' presentation of insufficient evidence or dispositive rulings of law. Chase contends, therefore, that there were no claims to be resolved by a jury. While it is clear from the trial judge's memorandum of decision that most of the issues raised were disposed of on legal rather than factual bases (the defendants conceded the amount of the outstanding balance on the loans), the same is not altogether clear as to at least one of the counterclaims. In choosing to address the issue of the defendants' right to a jury trial, we need not decide whether there were disputed issues of fact.

It was not error in this case for the motion judge to rule that the three documents were part of one transaction and were, therefore, to be read together. The three documents were signed at the same time. The guaranty makes reference to the other agreements. It provides that, "to induce [Chase] . . . to extend financial accommodation [to G.S.F.], . . . the [defendants] . . . hereby unconditionally guarantee to Chase . . . that [G.S.F.] will promptly perform and observe every agreement and condition in any Credit Arrangement to be performed or observed by [G.S.F]." The documents, moreover, were interrelated in purpose. Chase sought the defendants' personal guarantees because they were the principals of the corporation borrowing money. Compare *Exchange Mut. Ins. Co.* v. *Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984); *Fidelity & Deposit Co.* v. *Parsons & Whittemore Contractors Corp.*, 48 N.Y.2d 127 (1979) (both cases in which the underlying agreement was executed subject to obtaining a surety bond, and later an insurer, a stranger to the underlying transaction, agreed to guarantee performance). The defendants were the ones who negotiated the loan on behalf of G.S.F., and they could easily monitor and control G.S.F.'s performance of its obligations under the agreement. As the underlying contracts with G.S.F. included waivers of the right to a jury trial, the motion judge properly concluded that Chase and the defendants waived a jury trial in all claims relating to the transaction.

2. *Was the jury waiver enforceable?* The more difficult question is whether, in the circumstances, the provision relating to jury trial was enforceable. The Massachusetts Declaration of Rights, art. 15, guarantees the right to a jury trial in certain types of civil cases, including claims such as many of those in the present case, and states that "this method of procedure shall be held sacred. . . ." See also Mass.R.Civ.P. 38(a), 365 Mass. 800 (1974). Nevertheless, the right is one which may be waived, for example, by failure to make a timely demand. See Mass.R.Civ.P. 38(d), 365 Mass. 801 (1974). The right to a jury trial may also be waived by contract. See *Palmer* v. *Lavers*, 218 Mass. 286, 291 (1914);

*Cadillac Automobile Co. of Boston* v. *Engeian*, 339 Mass. 26, 30 (1959); *Spence* v. *Reeder*, 382 Mass. 398, 411 (1981). That is not surprising, as courts have been receptive to contractual waivers of broader procedural rights than the one involved here. Private parties, for example, may be bound by a contract requiring arbitration of future disputes. See G. L. c. 251, § 1; *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. at 162; *Computer Corp. of America* v. *Zarecor*, 16 Mass. App. Ct. 456, 459 (1983). See also *Shearson/Am. Exp., Inc.* v. *McMahon*, 482 U.S. 220, 225-226 (1987), and *Rodriguez de Quijas* v. *Shearson/ Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) in which, under the Federal arbitration statute, 9 U.S.C. § 1, intended, according to the Court, to reverse centuries of judicial hostility to such agreements, arbitration agreements between brokerage firms and their customers were held to be enforceable as broadly as contractual provisions in general. Agreements in advance to arbitrate, it should be noted, eliminate not only the right to a jury trial on the merits of a dispute, but the right to *any* judicial trial. See also *D.H. Overmyer Co.* v. *Frick Co.*, 405 U.S. 174, 185-186 (1972) (upholding a contract that included waiver in advance of due process rights considerably more comprehensive than the right to a jury trial).

Like any other provision in a contract, including an agreement in advance to arbitrate, a provision waiving the right to a jury trial may be set aside on the basis of fraud or overreaching. Compare G. L. c. 106, § 2-302. Neither is claimed here. Instead, all that was presented to the judge ruling on the motion to strike the jury trial demand, apart from the absence of the defendants' signature on the security agreements, was a reference to the "sacrosanct" nature of the right to a jury trial and a description of the loan documents in which the waiver was "[b]uried in fine print." In their response to the motion to strike, the defendants expressly declined to "deal[] with the issues of actual notice and intent. . . ." As far as the "sacrosanct" nature of the right to a jury trial is concerned, it is, as noted, one that may be waived by contract. As far as the description of the loan doc-

uments is concerned, the issue which the defendants sought to raise is whether the contract is one of adhesion and, if so, whether a provision relating to the right to jury trial in such a contract should be enforced.

The jury trial waiver appears in two separate loan agreements which we assume to be standard forms prepared by Chase. One is three and one-half pages in length, and the waiver appears in clear language at the end of a paragraph on the same page as the signatures. The other agreement is four pages long, and the waiver language appears in the middle of a paragraph, also on the signature page. The print is relatively small but legible. The documents could well be described as a contract of adhesion in that it is unlikely that the parties actually negotiated most of the provisions. See Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv. L. Rev. 1173, 1177 (1983). When construction of such an agreement is in issue, it is to be construed strictly against the drafter. See *Lechmere Tire & Sales Co.* v. *Burwick*, 360 Mass. 718, 720-721 (1972). Generally, however, such contracts are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances. *Id.* at 721 n.3. "Customers who adhere to standardized contractual terms ordinarily 'understand that they are assenting to the terms not read or not understood, subject to such limitations as the law may impose.'" *Carpenter* v. *Suffolk Franklin Sav. Bank*, 370 Mass. 314, 327 (1976) (quoting from a comment accompanying tentative drafts of the Restatement [Second] of Contracts). The section of the Restatement dealing with enforceability of adhesion contracts now provides that such contracts are generally enforceable but not as to a term to which the party who drafted the agreement had reason to believe that the other party would not have assented had he known the writing contained the term in issue. Restatement (Second) of Contracts § 211 (1979).

We proceed to apply those standards to the situation before us. The jury waiver language is clear and, if not conspicuous, at least legible. Such agreements, calling for depri-

vations less severe than agreements to arbitrate, cannot be said to be unconscionable or against public policy. The jury trial waivers are, by their terms, binding mutually on Chase and the defendants, and they offer at least the potential of somewhat less costly and complicated litigation in the event of a dispute. Jury waiver provisions are not so unusual or oppressive that Chase should have believed that the defendants would not have agreed to them if brought to their attention at the time the documents were signed. We come, then, to the issue of fairness in the particular circumstances. The defendants were experienced businessmen, not average consumers. There has been no showing of any exploitation or gross inequality in their respective bargaining positions. According to the affidavits filed by the parties, they dealt with each other at arm's length, and the defendants had other lenders willing at the time to extend them the substantial financing they were seeking. According to testimony at trial, the defendants were represented by counsel who reviewed the documents before they were signed. In these circumstances, we do not regard enforcement of the jury waiver as unfair to the defendants. As there has been no showing that the contract provision was unconscionable, contrary to public policy, or unfair in the circumstances, we apply the usual rule that even standardized contracts are to be enforced according to their terms. See *Minassian* v. *Ogden Suffolk Downs, Inc.*, 400 Mass. 490, 492 (1987).

Federal cases applying the Seventh Amendment to the United States Constitution in similar circumstances seem to impose a somewhat stricter standard for enforcement of contractual provisions waiving the right to jury trial than the one we have set forth. They require that any waiver be knowing and intentional. See *National Equip. Rental, Ltd.* v. *Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977); *K.M.C. Co.* v. *Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985); *Dreiling* v. *Peugeot Motors of America, Inc.*, 539 F. Supp. 402, 403 (D. Colo. 1982). See also *Gaylord Dept. Stores of Ala., Inc.* v. *Stephens*, 404 So. 2d 586, 588 (Ala. 1981). Compare *Sniadach* v. *Family Fin. Corp.*, 395 U.S. 337 (1969); *Fuen-*

*tes* v. *Shevin*, 407 U.S. 67, 94-96 (1972). In most of the cases in which the contractual term was not enforced, however, the court found gross inequality in the bargaining positions of the parties. Where the court found no extreme bargaining disadvantage, jury trial waivers even in standardized contracts were enforced. See *Leasing Serv. Corp.* v. *Crane*, 804 F.2d 828 (4th Cir. 1986); *In re Reggie Packing Co.*, 671 F. Supp. 571, 573 (N.D. Ill. 1987). In any event, the defendants in the present case expressly declined to deal with the issue of actual notice and intent.

> *Judgment affirmed.*
> *Denial of motion for new*
> *trial affirmed.*