RHODE ISLAND DEPOSITORS
ECONOMIC PROTECTION
CORPORATION

v.

COFFEY AND MARTINELLI,
LTD. et al.

v.

Muriel A. Lanfredi.

No. 2000–517–Appeal.

Supreme Court of Rhode Island.

April 18, 2003.

Justin T. Shay, Charles S. Beal, Providence, for Plaintiff.

John P. Boyajian, J. Richard Ratcliffe, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ., and WEISBERGER, C.J. (Ret.).

## OPINION

WEISBERGER, Chief Justice (Ret.).

This case comes before us on an appeal by Muriel A. Lanfredi (Lanfredi or defendant) from the Superior Court order that granted the motion of Rhode Island Depositors' Economic Protection Corporation (DEPCO or plaintiff) to strike the defendant's demand of a trial by jury. The defendant also appeals from the judgment of the Superior Court that extinguished her cross-claim against John E. Martinelli, a co-defendant. She appeals from an implicit determination in respect to the striking of her claim to a jury trial that she is liable as a guarantor on the third note from Coffey and Martinelli, Ltd., to Rhode Island Central Credit Union (RICCU or credit union). We deny and dismiss the appeal from the order striking the defendant's demand for a trial by jury and sustain the defendant's appeal from the dismissal of her cross-claim against Martinelli. The facts and procedural history of the case insofar as pertinent to this appeal are as follows.

## Facts and Procedural History

On October 10, 1989, RICCU loaned $150,000 to the law firm of Coffey and Martinelli, Ltd. (the Firm). In return for this loan, a promissory note was executed in favor of RICCU. On the same date, RICCU extended a line of credit to the Firm for $200,000. This transaction was memorialized by a promissory note executed by the Firm. On December 12, 1989, RICCU loaned the Firm $50,000 and received from the Firm a promissory note in that amount. The Firm satisfied its obligation on the $200,000 line of credit but defaulted on the first and third promissory notes.

On October 10, 1989, the Firm executed a loan agreement, which provided in part:

"Section 1.04. The Note and all presently existing and hereafter arising indebtedness of the Borrower to the Lender shall be secured by:

(a) Security Agreement;

(b) Guaranty of John G. Coffey, Jr.;

(c) Guaranty of John E. Martinelli;

(d) Guaranty of Muriel A. Lanfredi."

On that same date, John G. Coffey, Jr., John E. Martinelli, and defendant each executed an instrument of guaranty, which provided, in part, as follows:

"Guarantor hereby unconditionally and irrevocably guarantees * * * (iv) the due and punctual performance and observance of all of the other terms, covenants and conditions contained in the Note, the Loan Agreement and any other security instruments and agreements securing the Note on the part of Borrower to be performed or observed."

The promissory notes, the loan agreement, and the documents of guaranty were all drafted by defendant. The first and third promissory notes contained the following language:

"This Note is delivered in and shall be construed by the laws of the State of Rhode Island, and in any litigation in connection with, or enforcement of, this Note or any security given for payment hereof, Obligors and each of them, waive(s) trial by jury and consent(s) and confer(s) personal jurisdiction on courts of the State of Rhode Island or of the Federal Government and agree(s) that service of process may be made on Obligors by mailing a copy of the summons to their address."

The guaranty executed by defendant contains the following provision:

"WHEREAS, Lender has advised Guarantor that it will not enter into the aforesaid loan transaction with Borrower unless, among other matters, all of the obligations of Borrower under the Note and certain other agreements as hereinafter provided, including without limitation the punctual payment of both principal and interest to be paid, are guaranteed by Guarantor * * * [.]"

The document also provides:

"Guarantor hereby unconditionally and irrevocably guarantees:

" * * * (iv) the due and punctual performance and observance of all of the other terms, covenants and conditions contained in the Note, the Loan Agreement and any other security instruments and agreements securing the Note, on the part of Borrower to be performed or observed."

After the default on the first and third notes, all assets of RICCU were assigned to DEPCO, which brought an action in the Superior Court for the County of Kent against the Firm and the individual guarantors of the notes, including defendant. In 1996, DEPCO moved for summary judgment on the two notes. The defendant-guarantors, including Lanfredi, in opposing the motion, argued that the guaran-

ty did not extend to the third note, for $50,000, that had been executed on December 12, 1989, but was applicable only to the first and second notes, which both were executed on October 10, 1989. They also argued that DEPCO had conducted a "strict foreclosure" of the Firm's former premises that had the effect of extinguishing the Firm's remaining debt. The motion justice, on May 30, 1996, issued a bench decision in which she denied DEPCO's motion for summary judgment on the ground that there were material factual issues relating to the strict foreclosure defense. She also purported to hold, as a matter of law, that the guarantors' obligations extended to the December loan of $50,000 and that the guaranties incorporated by reference and adopted the terms of the loan agreement. The motion justice did not grant a partial summary judgment, but delivered an oral decision denying DEPCO's motion for summary judgment.[1]

Thereafter, in September 2000, three motions came before another justice of the Superior Court. These motions were (1) DEPCO's motion to strike Lanfredi's demand for trial by jury, (2) a motion by John E. Martinelli to approve a proposed settlement between him and DEPCO pursuant to G.L.1956 § 42–116–40 and (3) Lanfredi's motion for summary judgment on her cross-claim for indemnity and contribution against Mr. Martinelli. After oral argument, the second justice granted DEPCO's motion to strike defendant's demand for jury trial, denied the Lanfredi motion for summary judgment, and approved Martinelli's settlement with DEPCO, which had the effect of extinguishing defendant Lanfredi's cross-claim against Martinelli.

The defendant's cross-claim against Martinelli was based upon an agreement executed by Messrs. Coffey and Martinelli and the law firm when Lanfredi withdrew as a member of the Firm in April 1991 (the withdrawal agreement). This withdrawal agreement provided that the Firm and its individual members would indemnify Lanfredi for any amount awarded to RICCU, its successors or assigns, that exceeded 33 percent of the outstanding balance of principal and interest owed to RICCU. DEPCO was the successor in interest to RICCU.

To support her appeal, defendant raises three issues. These issues will be considered in the order of their significance to this opinion. Further facts will be supplied as needed to deal with these issues.

### I

### The Extension of the Guaranty to the Third Note

■■■■ The defendant argues that the first justice erred in holding that her guaranty extended to the third note, for $50,000, which was executed in December 1989. She contends that her guaranty related only to the first and second notes, which were executed on October 10, 1989. DEPCO contends that defendant Lanfredi cannot challenge this holding of the first motion justice in 1996 on the ground that the time for appeal from this ruling has long passed. DEPCO's contention on this issue is without merit because the only order issued by the first justice was a denial of DEPCO's motion for summary judgment. Such an order is interlocutory and may not be reviewed by appeal as of right. *McKinnon v. Rhode Island Hospi-*

---

1. Although the motion justice directed counsel to prepare a written order denying DEPCO's motion for summary judgment, no such order ever was entered. This does not affect our opinion in this case, because a second motion justice implicitly confirmed this determination.

*tal Trust National Bank,* 713 A.2d 245, 247 (R.I.1998). However, this "ruling" was in effect confirmed by the second motion justice when she struck the demand for jury trial in respect to the third note, declaring it to be the law of the case.[2] It is undisputed that the appeal from the orders of the second motion justice was timely. Consequently, this issue is properly before the Court at this time.

We are of the opinion that the second justice was correct in extending the guaranty to the third note because the guaranty document contained a provision that bound the guarantor to abide by the terms of the loan agreement. The loan agreement provided that "[T]he Note and all presently existing *and hereafter arising indebtedness* of the Borrower to the Lender shall be secured by * * * (d) Guaranty of Muriel A. Lanfredi." (Emphasis added.) We conclude that this language is clear and unequivocal and relates to any indebtedness that may thereafter be incurred by the Firm in favor of RICCU. We have held that unless the terms of a written contract are ambiguous, it should be interpreted as a matter of law in accordance with its plain terms. *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440, 443 (R.I.1994). We also have held, in *Rotelli v. Cantanzaro,* 686 A.2d 91, 94 (R.I.1996), that instruments executed in the course of a single transaction at the same time and to accomplish the same purpose should be read and construed together.

■ Construing the document of guaranty *together with the loan agreement,* it appears that the guaranty extended to hereafter arising indebtedness. There

was no limitation to this term and therefore the argument that the hereafter arising indebtedness related only to the second line of credit note is unpersuasive. If there were any ambiguity in this statement (and we believe there is not), it should be construed against the draft person, who was defendant Lanfredi, *Fryzel v. Domestic Credit Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666–67 (1978); *A.C. Beals Co. v. Rhode Island Hospital,* 110 R.I. 275, 287, 292 A.2d 865, 872 (1972), as well as the maker of the instrument of guaranty. *Bailey & Gallup v. Larchar,* 5 R.I. 530, 534 (1858).

Consequently, we conclude that the second justice was correct in determining that the Lanfredi guaranty extended to the third note.

## II

### Striking of the Demand for Jury Trial

■ The second motion justice held that defendant's guaranty, when construed together with the terms of the first and third promissory notes, effectively waived her right to a jury trial. We have held in *Rotelli,* 686 A.2d at 94, that separate documents executed as a part of the same loan transaction should be construed together. We further enunciated the following general principles:

"It has long been a general rule in this jurisdiction that instruments executed 'at the same time, for the same purpose and in the course of the same transaction * * * are to be considered as one instrument and are to be read and construed together.' *Old Kentucky Distributing Corp. v. Morin,* 50 R.I. 163, 165,

---

**2.** This statement was not entirely accurate since the legal opinion expressed by the first motion justice was merely dictum. When she denied the motion for summary judgment, she made no other effective order that would be

binding upon another justice of the court. However, *the implicit ruling of the second motion justice, when she struck the demand for jury trial in respect to the third note, did become an effective order of the court.*

146 A. 403, 404 (1929); *see also Maderios v. Savino,* 418 A.2d 839, 842 (R.I. 1980) (promissory notes executed as part of single transaction construed together to determine the mutual rights and obligations of the parties). Moreover, instruments referred to in a written contract may be regarded as incorporated by reference and thus may be considered in the construction of the contract." *Rotelli,* 686 A.2d at 94.

In the case at bar, the guaranty, the loan agreement and the first note were all executed at the same time, on October 10, 1989. Thus, the principle set forth in *Rotelli,* would be applicable directly to the guaranty, the loan agreement and the first note. Thus, the waiver of jury trial in the first note would be applicable to the instrument of guaranty without any doubt.

■ In respect to the third note, we held that the guaranty extended to that instrument by virtue of the terms of the loan agreement, which applied the guaranty to "hereafter arising" indebtedness. Thus, the third note should be considered together with the guaranty and the loan agreement as part of a single, continuing transaction.

We recognize that there is a split of authority among the jurisdictions in circumstances when a promissory note contains a waiver of a jury trial but the document of guaranty does not. In *Chase Commercial Corp. v. Owen,* 32 Mass.App. Ct. 248, 588 N.E.2d 705 (1992), a corporation executed a promissory note together with a loan and security agreement. Individuals who were principals of the corporation executed personal guaranties. The loan documents contained a waiver of jury trial, but such a waiver was not included in the documents of guaranty. *Id.* at 706.

The Massachusetts Appellate Court rejected the guarantors' argument that they had not waived a jury trial because the guaranty document did not so state. The court held that the several documents all were part of the same transaction and therefore should be construed together in implementation of the intent of the parties. *Id.* at 707. The court emphasized the fact that the guaranties referred to the other loan documents. The Supreme Court of Connecticut also has recognized this doctrine in *L & R Realty v. Connecticut National Bank,* 246 Conn. 1, 715 A.2d 748, 756 n. 11 (1998). The court noted that when a contractual jury trial waiver is contained in the loan agreement but not in the guaranty agreement, the guarantor nevertheless may be bound by the waiver.

We recognize that some courts have held that a provision in a lease waiving a jury trial did not apply to a guarantor of the lessee's obligation. *See, e.g., Shapiro v. Marstone Distributors, Inc.,* 40 A.D.2d 878, 337 N.Y.S.2d 928 (1972); *First Borough Corp. v. Wasserstein,* 206 Misc. 753, 137 N.Y.S.2d 40 (App.Term.1954). However, we are persuaded by the opinions holding that a waiver of jury trial in a promissory note will apply to a guarantor whose document refers to the promissory note and subscribes to all obligations and requirements contained therein. We also are persuaded by courts that have held that waivers of a right to trial by jury contained in contractual agreements are not illegal and are not contrary to public policy. *Connecticut National Bank v. Smith,* 826 F.Supp. 57, 59 (D.R.I.1993); *Chase Commercial Corp.,* 588 N.E.2d at 709.

Consequently, we reject defendant's challenge to the striking of her claim for trial by jury.

## III

### The Dismissal of Defendant's Cross–Claim Against Martinelli

■ The defendant argues that the second motion justice erred in approving the

Martinelli settlement insofar as that settlement required a dismissal of her cross-claim against Martinelli. The Superior Court justice absolved Martinelli of his obligations under the withdrawal agreement to indemnify Lanfredi to the extent that she might be found liable under her guaranty for more than 33 percent of the indebtedness of the Firm. The justice relied upon the provisions of § 42–116–40, which deals with the effect of settlements with DEPCO in the following language:

"Notwithstanding any provisions of law to the contrary, a person, corporation, or other entity who has resolved its liability to the Rhode Island Depositors' Economic Protection Corporation, the receiver of Rhode Island Share and Deposit Indemnity Corporation or the receiver of any state-chartered financial institution in a judicially-approved good faith settlement is not liable for claims *for contribution or equitable indemnity* regarding matters addressed in the settlement. The settlement does not discharge any other joint tortfeasors unless its terms provide, but it reduces the potential liability of the joint tortfeasors by the amount of the settlement." (Emphasis added.)

In reviewing the decision of the Superior Court in its interpretation of this provision, our standard would be that of a *de novo* analysis because this constitutes a matter of law. *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001). We also have held that in construing the language of a statute, we must consider whether the language is clear and unambiguous. *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996). If the answer to that question is affirmative, then we must interpret the terms of the statute literally and give the words thereof their plain and ordinary meanings. *Id.* In construing the foregoing statute under the above-mentioned standards of construction, we note that the language absolves the settling party from claims *"for contribution or equitable indemnity."* Section 42–116–40. (Emphasis added.) From the context of this statute as well as the plain meaning of the words thereof, we cannot apply this language to contractual indemnity. In respect to the right to contribution, this right arises from the Uniform Contribution Among Joint Tortfeasors Act, G.L.1956 §§ 10–6–10 and 10–6–11. Obviously, the joint tortfeasor doctrine is inapplicable to the facts of this case since these rights and obligations depend wholly on contract. A right to contribution between co-guarantors also may be implied in law and governed by equitable principles. *Katz v. Prete*, 459 A.2d 81, 85 (R.I.1983). The defendant's right of indemnity is not based upon equitable principles or implication. It is based upon the contract signed by Martinelli upon Lanfredi's withdrawal from the Firm. Again, this statute is not ambiguous and the language must be given its plain and ordinary meaning. *Accent Store Design, Inc.*, 674 A.2d at 1226. Another rule of construction is that the court must "presume that the Legislature intended every word of the enactment to have a useful purpose and to have some force and effect." *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I.1989). This Court and other courts clearly have distinguished between equitable indemnity and indemnity based upon contractual obligations. *See, e.g., Rhode Island Depositors Economic Protection Corp. v. Hayes*, 64 F.3d 22, 25–26 (1st Cir.1995); *Muldowney v. Weatherking Products, Inc.*, 509 A.2d 441, 443 (R.I.1986). We must conclude that the DEPCO settlement statute intended to absolve one who enters into a judicially approved settlement with DEPCO from contribution or *equitable indemnity but not contractual indemnity.* If

the Legislature had desired to extinguish obligations derived from contractual indemnity, it would have so stated in clear and unequivocal terms.

Consequently, we are constrained to conclude that the motion justice erred in dismissing the cross-claim of defendant against Martinelli as an incident of approval of the settlement. Obviously, defendant has no standing to challenge the approval of the settlement except as it included a dismissal of her cross-claim. To the extent that the approval extinguished Lanfredi's cross-claim against Martinelli, the ruling is erroneous.

Consequently, we sustain the defendant's appeal from the dismissal of her cross-claim against Martinelli.

### Conclusion

For the reasons stated, we deny and dismiss the defendant's appeal from the extension of her guaranty to the third note and to the striking of her demand to a trial by jury. We sustain her appeal to the dismissal of her cross-claim against Martinelli and vacate the entry of judgment against Lanfredi on this cross-claim. We remand the papers in the case to the Superior Court for further proceedings consistent with this opinion.