Gants, Ralph D., J.
The plaintiff, Vespers Realty Advisors, Inc. (“Vespers”), asks this Court to dismiss this action for lack of subject matter jurisdiction, contending that the parties had contractually agreed that the only appropriate forum to resolve their dispute is in the Commonwealth of Pennsylvania. Alternatively, Vespers has moved to vacate the Arbitrator’s Report and Award, dated August 30, 2005 (“the Arbitrator’s Award”), which awarded Vespers $97,154.07, an amount Vespers considers wholly inadequate. This Court will address each motion in turn.
MOTION TO DISMISS FOR LACK OF JURISDICTION
On March 28, 1997, Vespers executed two agreements:
1. a New England Regional License Agreement (“the License Agreement”) with Binswanger Management Corp. (“Binswanger Management”) which granted Vespers the non-exclusive right to use Binswanger Management’s Proprietaiy Marks. In the License Agreement, Binswanger Management appointed the defendant Binswanger of Massachusetts (“BOM”) as its agent to act on its behalf as to all matters under the Agreement. License Agreement at SU6(a); and
2. a Marketing Agreement with BOM which provided that Vespers would be the exclusive operator of marketing efforts for commercial real estate brokerage centered around the trademark, “BINSWAN-GER,” in the New England regional market.
The License Agreement provided that the Court of Common Pleas of Philadelphia County and the United States District Court for the Eastern District of Massachusetts had “exclusive jurisdiction ... for the resolution of any claims or disputes arising out of or relating to this Agreement.” License Agreement at ¶ 16(b). The Marketing Agreement was silent as to any matter of jurisdiction. Although each Agreement was referred to in the other, neither Agreement incorporated the other by reference.
Generally, a provision in one agreement is not to be read into a separate agreement unless the former agreement is incorporated by reference into the latter. See Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 250 (1992). However, if the two agreements were “in essence part of one transaction, they must be read together to effectuate the intention of the parties." Id. Since these two agreements were in essence part of one transaction and should be read together, the question is whether the parties to the Marketing Agreement reasonably should be understood to have intended that exclusive jurisdiction for all litigation rests in Pennsylvania. This Court finds that it may not reasonably make such an inference as to the intent of the parties, and that the more appropriate inference is that the parties intended that only disputes regarding trademarks be brought exclusively in Pennsylvania.
Binswanger Management was a Pennsylvania corporation, headquartered in Philadelphia, so it is rea *78 sonable for It to insist that any trademark litigation arising from the License Agreement be conducted in its home city. Binswanger Management, however, was not a party to the Marketing Agreement. Both parties to the Marketing Agreement, Vespers and BOM, were Massachusetts corporations. Consequently, it is not reasonable to infer that they wished disputes arising from the Marketing Agreement to be litigated solely in Pennsylvania, especially when the documents and witnesses regarding any such marketing disputes were likely to be located in the New England region. Since the language of the Marketing Agreement does not give exclusive jurisdiction to Pennsylvania courts and since it is not apparent from the circumstances surrounding these agreements that the parties to the Marketing Agreement meant to resolve disputes that arose in New England in Pennsylvania courts, this Court finds that it is not reasonable to interpret the Marketing Agreement to give exclusive jurisdiction over all disputes arising from it to Pennsylvania courts. Therefore, Vespers’s motion to dismiss for lack of jurisdiction is DENIED.
VESPERS’S MOTION TO VACATE THE ARBITRATOR’S AWARD
In considering Vespers’s motion to vacate the arbitrator’s award, it is necessaiy to summarize the histoiy of this litigation. Vespers filed this action on September 24, 2004 alleging, among other things, that BOM breached its obligation under the Marketing Agreement to refer to Vespers all sales and business opportunities within the Licensed Territoiy, which included Massachusetts, by referring business to a competing Binswanger office in Natick. On March 24, 2005, Judge Nonnie Burnes of this Court allowed the defendants’ motion for summary judgment as to the tort claims, finding that the three-year statute of limitations for bringing tort claims had expired. Memorandum of Decision and Order on Defendants’ Motion for Summary Judgment, March 24, 2005 (Burnes, J.). Judge Burnes also dismissed so much of the Chapter 93A count that sought damages for “any claims for commissions more than four years prior to the filing of the complaint.” Id. at 2. She stayed the action as to the surviving counts for 90 days “to give Vespers a chance to demand arbitration pursuant to the contract and for the parties to arbitrate the claim.” Id.
The Marketing Agreement provides, in the paragraph entitled “Compensation”:
For all transactions between Vespers and BOM other than those specifically described in the following paragraphs, the Guidelines in Exhibit “A” will apply. The Guidelines are to be viewed solely as guidelines and each of the parties understands that there will need to be some flexibility in these Guidelines.
Marketing Agreement at 12(e)(1), p. 3.
Section III of Exhibit A, entitled “Referral Fees,” provides as follows:
3. Referral fees on leads to or from other Binswanger offices, divisions and affiliates shall be calculated from gross payments and based on the following guidelines:
a. 20%-35% for the party who refers the business
b. 50% for the party who services the business
c. 15%-20% for Binswanger of Massachusetts
d. Guidelines may be revised upon mutual agreement by the parties involved
e. In the event of a referral fee dispute, the facts surrounding the dispute shall be sent in writing to the Chief Financial Officer of BOM, who shall arbitrate. If such arbitration fails, the dispute shall be brought to the BOM shareholder who shall make a referral fee determination that shall be binding.
Marketing Agreement, Exhibit A, §3.
In late April 2005, in a conference call with the parties and their attorneys, Michael Brennan, BOM’s Chief Financial Officer (“CFO Brennan”), made clear that he would act as the arbitrator under Exhibit A of the Marketing Agreement, and that he would not appoint an independent arbitrator. On May 17, 2005, Vespers filed a motion to compel arbitration before an impartial arbitrator. After hearing on June 16, 2005, Judge Burnes denied the motion in a brief margin order. No explanation was provided in writing as to the reasons for her denial.
The arbitration was conducted before CFO Brennan on July 6-7, 2005, and he issued his Arbitrator’s Report and Reward on August 20, 2005. Vespers has moved to vacate the Arbitrator’s Award.
It is a well-established principle of law that “judicial review of arbitration awards is confined to certain narrow grounds.” City of Lawrence v. Falzarano, 380 Mass. 18, 28 (1980). The Uniform Arbitration Act, codified in Massachusetts atM.G.L.c. 251, establishes five narrow grounds for vacation of an arbitrator’s award:
(1) the award was procured by corruption, fraud or other undue means;
(2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
(3) the arbitrators exceeded their powers;
(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five, as to prejudice substantially the rights of a party; or
(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it *79 could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
M.G.L.c. 251, §12(a). Effectively, unless one or more of these grounds exist, a court of law must enforce an arbitrator’s decision, even if it is plainly wrong as a matter of fact or law. As the Supreme Judicial Court has declared, a court is “strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing... Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” City of Lynn v. Thompson, 435 Mass. 54, 61 (2001), quoting Plymouth-Carver Reg’l Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990) (internal quotations omitted).
Here, it is plain that there was evident partiality by the arbitrator, who was BOM’s CFO at the time of the events at issue and at the time he rendered his decision. In view of his evident partiality, the Arbitrator’s Award can stand only if either (1) he was not appointed as a neutral, or (2) Vespers, in Exhibit A of the Marketing Agreement, validly waived its right to an impartial arbitrator.
In considering whether BOM’s CFO was appointed as a neutral, this Court observes that arbitrators generally are expected to be neutral, that is, to serve as quasi-judges rather than advocates. However, in the world of arbitration, there are three-member arbitration panels, in which only one arbitrator is truly neutral, having been jointly agreed upon by both parties, and each party may select one arbitrator to serve essentially as its advocate with the neutral arbitrator. Here, there was only a single arbitrator, so if he was not appointed as a neutral, there was no neutral decision-maker. This Court understands that all parties agree that BOM’s CFO was appointed as a neutral in the sense that his role was to be that of a neutral decision-maker, not an advocate, and he was expected to be fair to all parties, notwithstanding his employment by one party. Consequently, this Court finds that, here, BOM’s CFO was appointed as a neutral within the meaning of M.G.L.c. 251, §12(a)(2).
In considering whether Vespers validly waived its right to an impartial arbitrator, this Court must consider two questions: (1) May a party lawfully waive its right to an impartial arbitrator? and (2) If so, did Vespers intend to waive that right? As to the first question, this Court finds that, in Massachusetts, a parly may not waive its right to an impartial arbitrator and that any arbitration agreement appointing an evidently partial arbitrator is unenforceable. In Patton v. Babson Statistical Organization, Inc., the plaintiff, a dental hygienist, was given a booklet by her employer providing a statement of her profit-sharing or deferred salary plan. 259 Mass. 424, 426 (1927). The booklet stated, “If any question arises as to the interpretation or application of any feature of the plan, the decision of the president shall be final.” Id. After she was discharged by the president, she filed suit to recover the deferred salary she contends she was due for her two years of employment. The Supreme Judicial Court stated:
The agreement in the present case is not like a building contract in which the decision of an architect or engineer respecting the quantity or quality of the work done is a condition precedent to the plaintiffs maintaining an action for the price.
If the phrase of the plan can be considered as an agreement for arbitration, it cannot be presumed that the parties intended to make such an arbitration a condition precedent to a right of the plaintiff to bring an action for the deferred salary. The defendant’s president, it may reasonably be inferred, was vitally interested in the decision of the question involved. It could have been found that he was prejudiced against the allowance of the plaintiffs claim and could not act disinterestedly; that he was not in a position to render a fair and impartial decision. In the interest of manifest justice the plaintiff was not bound by such an arbitration. As was said in Brocklehurst & Potter Co. v. Marsch, 225 Mass. 3, at page 8:
This construction is reinforced by the consideration that there is doubt about the validity of any arbitration clause which would constitute one party to a dispute a member of a board of arbitration to pass upon his own claims. Arbitration implies the exercise of the judicial function. An arbitrator ought to be free from prejudice and able to maintain a fair attitude of mind toward the subject of controversy. It would be a travesty upon all ideas of judicial propriety or of judicial work for a man to be an arbitrator to settle the amount of his own liability. It is contrary to natural right and fundamental principles of the common law for one to judge his own cause.
It is plain that if the clause in question is an agreement for arbitration it is invalid.
Id. at 427-28. This Court recognizes that this Supreme Judicial Court decision was issued the same year that Babe Ruth hit 60 home runs, but this Court is aware of no case overruling it and still finds it controlling authority.
This Court also recognizes that Patton preceded Massachusetts’ enactment of the Uniform Arbitration Act in 1960, but this Court finds nothing in that Act that can reasonably be understood to be contrary to the holding in Patton. Indeed, the Act provides that “the court shall vacate an [arbitrator’s] award if . . . there was evident partiality by an arbitrator appointed as a neutral.” M.G.L.c. 251, §12(a)(2) (emphasis added). There is nothing in the Act that permits an award to be confirmed that is issued by a partial arbitrator appointed by the parties.
*80 Moreover, the holding in Patton recognizes the extraordinary deference that courts give to arbitration decisions under the Uniform Arbitration Act, and refuses to extend such deference to a decision made by a partial arbitrator. As noted earlier, a court is “strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing.” City of Lynn v. Thompson, 435 Mass, at 61 (2001), quoting Plymouth-Carver Reg’l Sch Dist. v. J. Farmer & Co., 407 Mass. at 1007. It is one thing for a court to extend such deference to decisions made by an impartial arbitrator and enforce a decision that is plainly wrong in its legal or factual findings: it is quite another to grant such deference when the decision is made by the Chief Financial Officer of one of the parties. The Patton decision reflects the unwillingness of Massachusetts courts to be “strictly bound” by the decision of a partial arbitrator and to be used to enforce such decisions, even if the parties agreed to a partial arbitrator.
As to the second question — whether Vespers intended to waive its right to an impartial arbitrator, this Court finds that, even if there were circumstances that would permit a court to enforce the parties’ agreement to be bound by the decision of a partial arbitrator, those circumstances are not present here. This is not an agreement in which the language plainly informs the parties that a partial arbitrator will make legally binding decisions regarding matters in dispute. Indeed, the so-called arbitration provision here makes little sense if read literally. As noted earlier, that provision in Exhibit A to the Marketing Agreement read:
In the event of a referral fee dispute, the facts surrounding the dispute shall be sent in writing to the Chief Financial Officer of BOM, who shall arbitrate. If such arbitration fails, the dispute shall be brought to the BOM shareholder who shall make a referral fee determination that shall be binding.
In context, it must be remembered that Exhibit A simply set forth guidelines for the allocation of referral fees, that these guidelines were not binding but were truly meant to serve as guidelines, and that there was some flexibility in allocating the referral fees even if the guidelines were to be followed (e.g. the guidelines provided that “the party who refers the business” could receive as little as 20 percent or as high as 35 percent of the referral fees). If the party who referred the business, the party who serviced the business, and BOM could not agree on an allocation, Exhibit A recognized the need for a process to resolve a referral fee dispute. The defendants contend that the process that was agreed upon was that the CFO of BOM would serve as the final arbitrator, but that is not what the language from Exhibit A quoted above appears to provide because, if the CFO were truly to arbitrate, the arbitration could not “fail.” Mediations can fail, when the parties fail to reach agreement, but arbitrations do not fail, because no party needs to accept the result. Therefore, the more reasonable reading of this provision is that, in the event of a referral fee dispute, the CFO of BOM attempts to mediate among the various brokers and, if his mediation fails, the dispute is brought to the BOM shareholder, whose decision is “binding.” While BOM contends that the use of the term “binding” means that it constitutes a binding arbitration decision, this Court finds that far from clear from the language of this provision. It is more reasonable to understand this provision to mean that, when there is a dispute among the brokers and BOM regarding referral fees and BOM’s CFO is unable to obtain agreement via mediation, the final allocation of referral fees is determined by the BOM shareholder. The BOM shareholder is not issuing the final arbitration decision; he is simply issuing the final corporate decision, from which a broker may seek redress from the courts or, by agreement, an impartial arbitrator.
As reflected in the Patton decision, this procedure for reaching a final internal decision is analogous to that used in construction, where the architect often is appointed to resolve construction disputes and determine what the owner (or the general contractor) must pay to a contractor. While this internal procedure to reach a final decision must be exhausted before any aggrieved party files suit, it does not deny the aggrieved party the opportunity to file such a suit once a final decision is reached.
Here, this Court does not have the benefit of parol evidence to determine whether the parties intended that the ambiguous referral fee dispute provision in Exhibit A provided for a true arbitration or simply for a means to obtain a final internal decision from BOM. This Court fortunately need not resolve that issue. It is sufficient here for this Court to find that, even if there were exceptions to the rule in Patton that an agreement to appoint a partial arbitrator is invalid as a matter of law, no exception would apply to the referral fee dispute provision here, because it does not even clearly provide for arbitration and certainly does not clearly inform the parties that they are agreeing to be legally bound by the decision of a partial arbitrator.
In reaching this decision, this Court is mindful that it may be seen to conflict with Judge Bumes’s denial of Vespers’s motion to compel arbitration before an impartial arbitrator. This Court makes three points on that issue. First, it is not plain that my decision is truly in conflict with hers. Since she simply denied that motion and did not explain her ruling in writing, this Court does not know the basis for her ruling. To be sure, if that motion had come before me on this record, I, too, would have denied it, not because the parties had agreed to appoint a partial arbitrator, but because I cannot determine from the language used in the referral fee dispute provision in Exhibit A that the parties had agreed to arbitration of such disputes. *81 Second, even if the decisions are in conflict, no party had brought to her attention the controlling authority in Patton that I relied on in my decision; that authority was only belatedly brought to my attention by Vespers after the motion hearing. If presented with controlling authority, this Court has no doubt that Judge Bumes would have followed it. Third, “[t]he phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.” Gleason v. Hardware Mut. Cas. Co., 331 Mass. 703, 710. (1954), quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912). Certainly, if this Court believes that injustice would result from strict adherence to this general principle, it need not adhere to it. Gleason, 331 Mass, at 710.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. Vespers’s motion to dismiss is DENIED.
2. Vespers’s motion to vacate the Arbitrator’s Award is ALLOWED. The Award is hereby vacated.
3. The attorneys shall arrange with the Clerk a mutually agreeable date for a litigation control conference to determine how this case shall progress from here.