[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 02, 2010
JOHN LEY
CLERK

No. 10-11178
Non-Argument Calendar
_____

D.C. Docket No. 0:08-cv-61449-PAS

TEXTRON FINANCIAL CORPORATION,
a Delaware corporation,

Plaintiff - Counter-
Defendant - Appellee,

versus

RV SALES OF BROWARD, INC.,
a Florida corporation,

Defendant - Counter-
Claimant - Appellant,

GIGI D. STETLER,
individually,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 2, 2010)

Before EDMONDSON, CARNES and MARTIN, Circuit Judges.

PER CURIAM:

A money lender, Textron Financial Corporation, entered into an inventory financing arrangement with a recreational vehicle dealer, RV Sales of Broward, Inc., and its president, sole director, and guarantor, Gigi Stetler.[1] Textron and RV Sales executed a Credit and Security Agreement, providing for Textron to finance RV Sales' inventory of recreational vehicles, to pay the manufacturers of those vehicles, and to receive a security interest in them. The Credit Agreement incorporated by reference individual invoices that Textron sent to RV Sales for each vehicle financed, and that agreement also obligated RV Sales to pay Textron the costs and the interest specified on each invoice.[2]

This case stems from a disagreement between Textron and RV Sales over when it could begin charging the interest on the funds it paid to vehicle manufacturers. Textron contends it could charge interest from the "interest start" date printed on each invoice it sent to RV Sales; RV Sales contends that Textron could only charge interest from the date that it actually paid the sum on the invoice

---

[1]This opinion will refer to RV Sales and Stetler collectively as RV Sales.

[2]At the top of each invoice is a title: "Statement of Financial Transaction." The parties refer to the invoices as "SOFTs" or "FTDs." To avoid a confusing array of acronyms, we will simply call them the invoices. The parties also call "the Credit and Security Agreement" the CASA, but we will refer to it as the Credit Agreement.

to the vehicle manufacturers, which was later than the interest start date on the invoices. RV Sales defaulted on its payments to Textron. The sole issue on appeal is whether the parties' written agreements permitted Textron to charge RV Sales interest on funds before Textron had actually paid those funds to vehicle manufacturers.

## I.

After RV Sales defaulted on its payments, Textron filed a lawsuit seeking an injunction to prevent RV Sales from continuing to sell its inventory of recreational vehicles. Textron claimed that RV Sales had breached the parties' Credit Agreement, and it made a demand on Stetler as the guarantor under that agreement. Textron also sought immediate possession of RV Sales' inventory and an award of damages based on the expenses incurred in the process of repossession and sale. The district court issued a temporary restraining order directing RV Sales to return to Textron all of the unsold vehicles that Textron had financed.

Later Textron filed a motion for summary judgment on its breach of contract and breach of guaranty agreement claims. Textron sought the difference between the amount it had financed and the smaller amount it had recovered from the sale of the repossessed vehicles, which it described as the "deficiency." In addition to

the deficiency amount, it sought the principal owed, interest, attorney's fees, and costs. RV Sales counterclaimed, alleging beach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment—all based on the amount of interest Textron had charged on the funds it had advanced to vehicle manufacturers on RV Sales' behalf. The parties did not dispute the amount of the unpaid principal, but they did dispute the amounts of the deficiency, the costs, and the interest Textron had charged.

The district court granted Textron's motion for summary judgment, holding that the parties' agreements permitted Textron to begin charging interest on the invoice date, which was submitted to RV Sales on the invoices that the Credit Agreement incorporated by reference. The district court concluded that RV Sales had consented to the interest start dates that were listed on the invoices because it did not object to those dates, and under the Credit Agreement no objection meant acceptance of the terms. Responding to RV Sales' contention that the agreements did not permit Textron to begin charging interest until after it had sent the money for the recreational vehicles to the manufacturers on RV Sales' behalf, the district court reasoned that Textron had no duty to disclose to RV Sales the terms of its separate payment arrangements with the manufacturers. Instead, the agreements between RV Sales and Textron expressly set the dates for when the interest started

4

running, and the dates when Textron made payments to the manufacturers were irrelevant.

## II.

We review <u>de novo</u> a district court's grant of summary judgment, applying the same legal standards as the district court. <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "Contract interpretation is a question of law and is subject to <u>de novo</u> review." <u>American Cas. Co. of Reading, Pa. v. Etowah Bank</u>, 288 F.3d 1282, 1285 (11th Cir. 2002). It is undisputed that under the terms of the parties' agreements Rhode Island law applies. "[U]nless the terms of a written contract are ambiguous, it should be interpreted as a matter of law in accordance with its plain terms." <u>Rhode Island Depositors Econ. Prot. Corp. v. Coffey and Martinelli, Ltd.</u>, 821 A.2d 222, 226 (R.I. 2003).

The parties' agreements permit Textron to charge the interest that it did. Each invoice set forth the cost of the recreational vehicle being financed along with a specific interest rate and interest start date. Under the Credit Agreement, RV Sales agreed to pay those amounts as set forth in each invoice. The Credit Agreement provides that RV Sales "promises to pay to [Textron] the original invoice cost ("Invoice Cost") of each item of Inventory financed or refinanced for

5

[RV Sales] by [Textron] pursuant to each applicable FTD,[3] together with interest and charges on the Invoice Cost and/or fees on the account as specified in each applicable FTD and this Agreement (collectively, the "Total Debt")."  Doc. 1, Exh. A at ¶ 3.

The Credit Agreement also provides that unless RV Sales objected in writing to an invoice within ten days of the date it was received, RV Sales accepted the terms of that invoice, and those terms were incorporated into the Credit Agreement.  Id.  Specifically, the Credit Agreement states:

> [RV Sales'] failure to notify [Textron] in writing of any objection to a particular FTD within ten (10) days of the date such FTD is first made available to [RV Sales] shall constitute [RV Sales'] acceptance of all the terms thereof; (b) agreement that [Textron] is financing such Inventory at [RV Sales'] request; and (c) agreement that such FTD will be incorporated herein by reference.

Id.  It is undisputed that RV Sales did not object in writing to the invoices it received from Textron.  Those invoices expressly set out the date on which interest would begin to accrue, which was the same as the invoice date.  See, e.g., id. at Exh. D, "Statement of Financial Transaction," ("Invoice Date:  06/05/2008" and "Interest Start: 06/05/2008").  Thus, RV Sales did not object to interest beginning

---

[3]The Credit Agreement refers to an invoice as an "FTD."

to run from those specific dates, regardless of when Textron paid the vehicle manufacturers.[4]

The Credit Agreement expressly provided that advances to vehicle manufacturers would be made solely according to Textron's discretion and that RV Sales had no right to expect otherwise based on Textron's agreements with manufacturers. Id. at Exh. A, ¶ 2 ("[RV Sales] understands and agrees that each Advance will be solely at [Textron's] discretion, and [RV Sales] expressly disclaims any right to expect otherwise as a result of . . . [Textron's] arrangements with any Manufacturer."). In the Credit Agreement, RV Sales agreed "that its obligations to [Textron] with respect to collateral financed by [Textron] shall be absolute and unconditional at all times after [Textron] has advanced or committed to advance all or any part of the invoice cost of such collateral to the seller thereof." Id. at Exh. A., ¶ 5 (capitalization altered and emphasis added). Thus, according to the express terms of the Credit Agreement, RV Sales was obligated to pay Textron the invoice cost—which included interest running from a specified

---

[4]Under its separate agreements with vehicle manufacturers, Textron committed to pay the manufacturers ten to fifteen days after the invoice date. Textron did not have an affirmative duty to disclose to RV Sales the terms of its separate agreements with vehicle manufacturers. If the parties had wanted certain disclosure requirements, they could have bargained for them and included them in their written agreements. See Aneluca Assocs. v. Lombardi, 620 A.2d 88, 92 (R.I. 1993) ("Absent illegality, contracting parties are free to bargain as they see fit. When the bargained-for agreement is reduced to writing, a court may not make a new contract for the parties or rewrite the existing contract.") (quotation marks omitted).

date—even if Textron had not actually advanced funds to a vehicle manufacturer but had only "committed to advance" those funds.

Because the unambiguous terms of the parties' written agreements obligated RV Sales to pay the interest that Textron charged, the district court did not err by granting summary judgment in favor of Textron.

**AFFFIRMED.**